**NO.** 94-438

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

AgAMERICA, FCB, a corporation, successor
in interest to The Bank of Spokane,

     Plaintiff and Respondent,

  -vs-

GARY G. ROBSON and DONA ROBSON,
husband and Wife,

     Defendants and Appellants.

FILED

AUG 17 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourteenth Judicial District,
In and for the County of Musselshell,
The Honorable Kenneth R. Wilson, Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

        A. Clifford Edwards, Roger W. Frickle; Edwards Law
Firm, Billings, Montana

     For Respondent:

        A. Lance Tonn; Lucas and Monaghan, Billings, Montana

Submitted on Briefs: April 6, 1995

Decided: August 17, 1995

Filed:

_____
       Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Gary G. Robson and Dona C. Robson (Robsons) appeal from an order of the Fourteenth Judicial District Court, Musselshell County, granting summary judgment in favor of AgAmerica, FCB (AgAmerica) and denying their motion to compel discovery, and from the subsequent Judgment, Decree of Foreclosure and Order of Sale. We reverse in part, vacate in part and remand.

The issues presented on appeal are:

1. Did the District Court err in granting summary judgment to AgAmerica on the Robsons' affirmative defense and AgAmerica's foreclosure action?

2. Did the District Court err in granting summary judgment to AgAmerica on the Robsons' counterclaim?

3. Did the District Court err in denying the Robsons' motion to compel discovery?

The Robsons borrowed $131,000 from AgAmerica's predecessor in interest (hereafter also referred to as AgAmerica) to purchase real property in 1976. They executed and delivered to AgAmerica a promissory note evidencing the loan. As security for repayment of the loan, the Robsons also executed, filed and recorded a mortgage covering the subject property. The mortgage incorporated the provisions of the Farm Credit Act of 1971 and amendments thereto, including the loan restructuring provisions of the Agricultural Credit Act of 1987 (collectively, the Act).

The terms of the loan required the Robsons to make annual installment payments. The Robsons made only a partial payment of the 1985 installment and did not pay any of the installments due in 1986 through 1988. In 1989, the Robsons and AgAmerica entered into

2

a restructure agreement regarding the loan. After the Robsons failed to make required payments on the restructured loan, AgAmerica advised them that their loan "may be a distressed loan" pursuant to the Act and sent them an application for a second restructuring.

In August 1990, the Robsons submitted the second restructure application to AgAmerica. AgAmerica denied the application for a number of reasons, including insufficient income to repay the first restructured loan and the lack of additional collateral being offered for the second restructuring. The Robsons requested review of the decision by AgAmerica's Credit Review Committee. The Credit Review Committee upheld the denial of the Robsons' second application to restructure their loan.

AgAmerica filed, and later amended, a complaint to foreclose on the Robsons' mortgage. The Robsons answered, denying AgAmerica's allegations regarding default and acceleration. The Robsons alleged, as an affirmative defense, that AgAmerica had failed to comply with the loan restructuring provisions of the Act and counterclaimed for damages based on AgAmerica's alleged breach of fiduciary duty. After AgAmerica refused to respond to discovery requests relating to their affirmative defense, the Robsons filed a motion to compel discovery.

AgAmerica moved for summary judgment on the Robsons' affirmative defense and counterclaim and on its foreclosure complaint; it also moved for protective orders regarding discovery sought by the Robsons. The District Court granted AgAmerica's

motions for summary judgment and for protective orders, denied the Robsons' motion to compel discovery, and subsequently entered its Judgment, Decree of Foreclosure and Order. The Robsons appeal.

> 1. Did the District Court err in granting summary judgment to AgAmerica on the Robsons' affirmative defense and AgAmerica's foreclosure action?

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. The party moving for summary judgment bears the initial burden of establishing both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Brinkman & Lenon v. P & D Land Enterprises (1994), 263 Mont. 238, 242, 867 P.2d 1112, 1115. The same rules apply to a party seeking summary judgment on an opposing party's affirmative defense. Brinkman & Lenon, 867 P.2d at 1115.

The District Court granted summary judgment to AgAmerica on the Robsons' affirmative defense and counterclaim and on AgAmerica's foreclosure complaint. We review an order granting summary judgment by applying the same criteria as the district court. Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214.

We begin by examining the court's grant of summary judgment in AgAmerica's favor on the Robsons' affirmative defense. The Robsons' affirmative defense is based on allegations that, in considering their application to restructure, the Act required AgAmerica: (1) to consider whether the cost to the lender of

4

restructuring the loan is equal to, or less than, the cost of foreclosure; (2) to perform specified computations in determining the cost of foreclosure; (3) to perform certain computations in determining the cost of restructuring; and (4) to restructure a loan if the potential cost of restructuring is less than, or equal to, the potential cost of foreclosing. The Robsons alleged that AgAmerica did not perform the computations necessary to determine the cost of foreclosure or the cost of restructuring and, therefore, that AgAmerica did not determine whether the cost of restructuring was equal to, or less than, the cost of foreclosure, all in violation of the requirements of the Act.

Comparing the Robsons' affirmative defense allegations to the Act itself reveals that the allegations are nearly verbatim quotes of 12 U.S.C. §§ 2202a(d)(1)(A), (a)(2), (e)(2), and (e)(1). Thus, the clear and unequivocal crux of the allegations is that AgAmerica failed to comply with the Act in certain specified regards. The District Court determined at the outset of its analysis, however, that the crux of the affirmative defense is a contention that, while AgAmerica complied with the substantive provisions of the Act, its evaluation of the second restructure application was flawed. The court's determination is a misreading of the affirmative defense as pled by the Robsons.

We recently resolved the issue of whether an affirmative defense to a mortgage foreclosure action may be predicated on a lender's failure to comply with the requirements of the Act. In Farm Credit Bk. of Spokane v. District Court (1994), 267 Mont. 1,

5

24, 881 P.2d 594, 608, we held that, where the parties' mortgage incorporates the loan restructuring provisions of the Act, an affirmative defense based on the lender's failure to comply with the Act is available. While Farm Credit Bk. of Spokane was decided after the District Court's decision in this case, the general rule is that an appellate court must apply the law in effect at the time it renders its decision. Haines Pipeline v. MPC (1992), 251 Mont. 422, 433, 830 P.2d 1230, 1238. Thus, we examine the case presently before us under Farm Credit Bk. of Spokane.

Here, it is undisputed that the mortgage at issue incorporated the loan restructuring provisions of the Act. As set forth above, it is clear that the Robsons alleged AgAmerica's failure to comply with those provisions as an affirmative defense. Thus, AgAmerica is entitled to summary judgment on the Robsons' affirmative defense only if it established the absence of genuine fact issues regarding its compliance with the Act's least cost analysis requirements, as contained in 12 U.S.C. §§ 2202a(d)(1)(A), (a)(2), (e)(2) and (e)(1).

In this regard, the District Court made several determinations. It first determined that the Robsons "tacitly admit" that AgAmerica complied with all of the procedural requirements of the Act. This determination is incorrect; it also impermissibly shifts the burden on summary judgment. The court based this determination on an erroneous reading of a portion of the Robsons' brief opposing summary judgment which, in turn, relied on Gary Robson's deposition. In fact, while the Robsons admit that

6

AgAmerica "complied with at least a portion of the Act's mandated provision[s]," their brief did not admit compliance by AgAmerica with all of the Act's requirements. Conspicuously absent from the admitted compliance list are the very requirements the Robsons allege were not met by AgAmerica and which form the basis for their affirmative defense; namely, compliance with the requirement that the lender consider the least cost factor when determining whether to accept a restructure application, perform computations to determine the costs of foreclosure and restructuring, and restructure the loan where the cost of restructuring is less than, or equal to, the cost of foreclosure.

Moreover, because the court had not determined that AgAmerica established the absence of a genuine issue of material fact regarding its compliance with the Act, the District Court's determination also impermissibly shifted the initial burden on summary judgment from AgAmerica to the Robsons. The nonmoving party need not establish the existence of a material factual issue unless and until the moving party has met its initial burden. See Brinkman & Lenon, 867 P.2d at 1115. Thus, the Robsons were entitled to rest on the allegations of their affirmative defense until AgAmerica established the absence of genuine issues of material fact regarding its compliance with 12 U.S.C. §§ 2202a(d)(1)(A), (a)(2), (e)(2), and (e)(1).

The District Court also determined that the Act's least cost analysis requirements are "but one of a number of factors to be considered in determining whether a restructure application

7

represents a sound credit decision." This determination is not altogether correct, given the requirement of the Act that a lender "shall restructure" a loan if it determines that the potential cost "of restructuring the loan in accordance with a proposed restructuring plan is less than or equal to the potential cost of foreclosure . . . ." 12 U.S.C. § 2202a(e)(1). In any event, however, the court's determination should have led the court logically and inexorably to the very question raised by the Robsons' affirmative defense: did AgAmerica consider the least cost factor as required by the Act? The District Court did not require AyAmerica to come forward with evidence establishing that it had considered the least cost factor as the Act requires. Instead, the court determined that AgAmerica denied the Robsons' restructure application for other reasons. That determination simply begs the question and does not establish the absence of any genuine issue of material fact regarding the Robsons' affirmative defense.

The effect of the District Court's decision is to allow AgAmerica to select the parts of the Act with which it chooses to comply. The Act, by its terms, does not permit such unfettered discretion in a lender, and neither will this Court, where the mortgage at issue incorporates the Act into the mortgage contract.

We conclude that the District Court erred in determining that AyAmerica established the absence of any genuine issue of material fact regarding the Robsons' affirmative defense. On that basis, we further conclude that the court erred in granting summary judgment to AyAmerica on the Robsons' affirmative defense. Because the

8

affirmative defense remains to be adjudicated, vie hold that the District Court also erred in granting summary judgment to AgAmerica on its foreclosure action.

2. Did the District Court err in granting summary judgment to AgAmerica on the Robsons' counterclaim?

After granting summary judgment to AgAmerica on the Robsons' affirmative defense, the District Court granted summary judgment on the Robsons' counterclaim. The Robsons contend that the court erred.

The Robsons' counterclaim begins by incorporating the allegations of their affirmative defense. In addition to the affirmative defense allegations summarized above, the allegations relate to the Robsons' first application to restructure their loan in 1988 and AgAmerica's failure to comply with the Act in permitting the first restructure. The counterclaim then alleges a breach of fiduciary duty by AgAmerica relating to the first restructure.

In ruling on AgAmerica's motion for summary judgment on the counterclaim, the District Court first stated that the counterclaim was largely disposed of by its ruling on the affirmative defense. Notwithstanding the court's error in the affirmative defense determinations, this determination by the court does not take into account the substantial difference between an affirmative defense to foreclosure based on failure to comply with the Act in considering the second restructure application and a tort claim for breach of fiduciary duty relating to the first restructure

application. The combination of these two errors prevented the District Court from properly addressing the Robsons' counterclaim in the context of AgAmerica's motion for summary judgment. Moreover, neither the Robsons nor AgAmerica analyzes the counterclaim separately from the affirmative defense on appeal.

We recognized in Farm Credit Bk. of Spokane that, where the parties' mortgage incorporates the Act, a party may enforce the terms of the Act via a breach of contract claim in the same manner as other contract terms are enforceable. Farm Credit Bk. of Spokane, 881 P.2d at 602. Here, however, the Robsons have not alleged a breach of contract counterclaim against AgAmerica. Thus, Farm Credit Bk. of Spokane is not directly applicable with regard to the Robsons' counterclaim as alleged, and the parties have not cited to any authority bearing directly on this issue.

Given our conclusion above that the District Court erred in granting summary judgment on the Robsons' affirmative defense, the consequent necessity of remanding this case for further proceedings and the lack of adequate briefing on the counterclaim issue, we conclude that it is appropriate to vacate the District Court's order granting summary judgment to AgAmerica on the Robsons' counterclaim and allow the parties and the court to consider the matter further on remand.

3. Did the District Court err in denying the Robsons' motion to compel discovery?

In its memorandum accompanying the order denying the Robsons' motion to compel discovery, the District Court concluded that:

10

> AgAmerica's "least cost calculations" and other data relating to its decision to deny Mr. and Mrs. Robsons' second Restructure Application is [sic] not relevant evidence and will not lead to the discovery of relevant evidence.

Our standard in reviewing a district court's ruling relating to discovery is whether the court abused its discretion. McKamey v. State (1994), 268 Mont. 137, 145, 885 P.2d 515, 520 (citation omitted).

Generally, parties may obtain discovery regarding any unprivileged information relevant to the subject matter of the action, including information which "relates to the claim or defense of the party seeking discovery. . ." Rule 26(b)(1), M.R.Civ.P. Here, the Robsons' motion to compel sought information regarding the least cost calculations performed by AgAmerica while processing the Robsons' second application to restructure their loan. As discussed above, this information is both the crux of the Robsons' affirmative defense to the foreclosure action and a mandatory consideration in AgAmerica's processing of their second application to restructure. The allegations that AgAmerica failed to consider the least cost factor and perform the computations necessary for that consideration, all as required by 12 U.S.C. § 2202a, constitute a cognizable affirmative defense to a foreclosure action. See Farm Credit Bk. of Spokane, 881 P.2d at 608. Thus, the Robsons' motion to compel discovery clearly sought information relevant to the "claim or defense of the party seeking discovery." See Rule 26(b)(1), M.R.Civ.P. Accordingly, we conclude that the District Court abused its discretion in denying the Robsons' motion

11

to compel discovery and in granting AgAmerica's related motions for protective orders.

The District Court's order granting summary judgment to AgAmerica on the Robsons' affirmative defense and its foreclosure action are reversed, the order granting summary judgment to AgAmerica on the Robsons' counterclaim is vacated, and the orders denying the Robsons' motion to compel discovery and granting AgAmerica's motions for protective orders are reversed. This case is remanded for further proceedings consistent with this opinion.

_____
Justice

We concur.

_____
Chief Justice



_____

_____

_____
Justices

12

Justice Fred J. Weber dissents as follows:

I respectfully dissent from the majority opinion.  Once again we are called upon to decide whether a lender has appropriately failed to restructure a distressed farm loan.

The majority holds that the lender must consider the least cost analysis for restructuring.  The federal statute at issue provides a list of five considerations that a lender is required to make when called upon to decide whether to foreclose on a party's farm loan or to restructure the loan.  The statute requires a lender to determine whether or not to restructure based upon:

1.  whether the cost to the lender of restructuring a loan is equal to or less than the cost of foreclosure;

2.  whether the borrower is applying all income over and above necessary and reasonable living and operating expenses to the payment of primary obligations;

3.  whether the borrower has the financial capacity and the management skills to protect the collateral from diversion, dissipation or deterioration;

4.  whether the borrower is capable of working out existing financial difficulties, reestablishing a viable operation and repaying the loan on a rescheduled basis; and

5.  in the case of a distressed loan that is not delinquent, whether restructuring consistent with sound lending practices may be taken to reasonably ensure that the loan will not become a loan that is necessary to place in nonaccrual status.   12 U.S.C. §

13

2202a(d)(1)A-E.

Here, the lender gave the following reasons for its denial of the second restructuring application--insufficient farm income to repay the loan, the Robsons did not provide the needed information on past operating history, the Robsons did not provide accurate projections and figures for the restructuring plan they supplied, the figures that were supplied did not match with former figures supplied to the agency, Farm Home had indicated that they would accelerate their loan because of large delinquencies and the Robson's plan did not deal with this at all, no documents supporting part of their projected income had been presented, and no additional collateral had been offered as security despite the fact that the Robson's plan called for an entire year lag time before a payment would be due.

This list shows that the lender did not arrive at this decision without thought.  I note with interest that the Robsons had not paid a single payment on the first restructured loan, yet they expected the lender to consider a second restructure plan. The second plan included a "zero" figure for yearly interest and did not take into account the $34,765 payment owed to FCB yearly. Thus, the Robsons, in offering this plan, admitted that they had no intent to repay this or any other loan, such as the Farm Home loan that was badly delinquent.

The Robsons' plan did not contain accurate figures and in certain pivotal areas, contained no figures.  A lender cannot make a "least cost" analysis  if it does not have the appropriate

14

information.   The Robsons were informed that they could provide documentation for their figures to the credit review committee.

The majority would have all lenders in all situations make the "least cost" analysis involving foreclosure v. restructuring even if the lender, as in this case, has not been provided with the appropriate figures upon which it could make that decision.   The majority would have all lenders do this far-from-simple task even if common sense and past performance have indicated that the farmers in question are without the sufficient ability to make the venture pay in any way.

The record of this case shows that AgAmerica made its own figures and set them beside the figures of the Robsons.   The lender's figures, while not giving the "least cost" analysis, showed clearly that the Robsons were not able to make this farm pay.   The law specifically directs lenders to consider the borrower's *repayment capacity* when making a "cost of foreclosure" figure  12 U.S.C. § 2202a(a)(2)(A).   The lender determined that there was *no repayment capacity* here.   Why does the majority believe that returning this case to the District Court is going to have any affect at all on the outcome of the Robsons *repayment capacity?*  The only thing accomplished by sending this case back is that the original $131,000 amount that was borrowed and is now close to $300,000 will be $400,000 by the time the case is settled.

There is nothing within the applicable legislation that indicates in any way that if the cost of restructuring is less than the cost of foreclosure the lender must restructure even if it is

15

painfully obvious, as here, that the farmer cannot make the venture pay or repay his escalating loan. The wording of the law merely states that the lender must consider this along with the other four factors. But if the lender determines that the farmers do not have the capacity to repay the loan, all the restructuring in the world is not going to repay the lender. And putting a monetary figure on restructuring when that is not a plausible alternative, accomplishes nothing.

If the restructuring plan itself is flawed as here, the lender cannot *make* the "least cost" analysis in any meaningful way. Such a set of circumstances means that the lender must look to the other four concerns of the federal law because the lack of repayment capacity has shown that they are needed for analysis--such criteria as whether the persons involved have the ability to handle a farm enterprise become the determining factor behind the decision.

I submit that the lender in this situation made the proper determination and that the District Court correctly analyzed the law and the lender's requirements under it.

The courts do not belong in the middle of these restructuring decisions because we do not have the practical sense needed to evaluate the workings of the parties involved in the decision-making. That is why the federal scheme provided for a credit review committee to review the lender's decision and not the courts. Such a credit **review committee** here affirmed denial of restructuring.

The **majority's** harangue against the "unfettered discretion" of

16

the lender in this case is unwarranted.  The lender used common sense when interpreting the rules provided it by the legislature and did not do anything in opposition to legislative directive.

I strongly disagree with the majority opinion and would vote to affirm the District Court.

_____
Justice

Chief Justice J.A. Turnage concurs in the foregoing dissent.

_____
Chief Justice