No. 85-034

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

HARRY CAIN, d/b/a CAIN ELECTRIC,

        Plaintiff and Respondent,

  -vs-

CLEATUS G. STEVENSON, d/b/a STEVENSON
and SONS CONSTRUCTION,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the Sixteenth Judicial District,
                In and for the County of Rosebud,
                The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Herndon, Harper & Munro; Rodney T. Hartman, Billings,
           Montana

      For Respondent:

           Clarence Belue, Hardin, Montana

---

                Submitted on briefs: July 11, 1985

                    Decided: September 19, 1985

Filed: SEP 19 1985

*Ethel M. Harrison*
                Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Harry Cain (respondent) filed this action on September 9, 1983, in the District Court of the Sixteenth Judicial District, seeking damages for injuries he received while working as an electrical subcontractor for Cleatus Stevenson (appellant). The jury awarded respondent $107,999.77. This appeal followed.

Respondent was the electrical subcontractor on a six-plex apartment building under construction in Ashland, Montana. Appellant was the owner of the building and the general contractor. Respondent was hired to complete the "rough-in" electrical work. He furnished his own tools and worked under his own time schedule.

By December 15, 1982, the day of the accident, respondent had been working at the construction site for approximately three days. On that day he came to work with his employee, Jim Miller. The weather was very cold and there was snow and ice on the ground.

The split-level building under construction did not have steps from the ground level to the second floor where respondent was working. The second floor entrance was approximately 3 to 4 feet above the ground so respondent propped his own 4-foot ladder against the wall. Respondent used the ladder to enter and exit the building several times that morning. At about 10:00 a.m., he attempted to exit the building but found his ladder to be missing. There was a concrete cinder block placed below the entrance which some of the workers used as a step. Respondent stepped down on the cinder block. The block was covered with ice, causing his foot to slip. He fell, hitting his buttocks on the block.

Pain in his lower back and buttocks resulted. The pain did not subside and he was forced to leave work early.

The pain continued for three weeks, at which time respondent saw a doctor who referred him to an orthopedic specialist. Two days after consulting the specialist, surgery was performed for what respondent understood to be an excision of a ruptured disc.

This action followed. On December 6, 1984, a jury verdict was rendered finding appellant 82 percent negligent and respondent 18 percent negligent. Respondent was awarded $107,999.77. The District Court entered judgment on the verdict. Appellant raises the following issues:

1. Whether the District Court was in error in ruling that the safe place to work statutes, §§ 50-71-201 and 50-71-202, MCA, create a duty running from a general contractor/owner to a subcontractor when the subcontractor retains substantial control over his means of access to the building where he works.

2. Whether the District Court was in error in ruling that respondent did not have the burden of proving damages by medical expert testimony.

3. Whether the District Court was in error in not reducing the jury's award of damages by the jury's finding of comparative negligence on the part of respondent.

SAFE PLACE TO WORK

It is well established in Montana that an employer must provide employees with a safe place to work. Section 50-71-201, MCA. This obligation has been extended from general contractors to employees of subcontractors when the general contractor controls job safety or has a non-delegable duty of safety arising out of contract. Stepanek v. Kober Construction (Mont. 1981), 625 P.2d 51, 38 St.Rep. 385.

3

Shannon v. Howard S. Wright Const. Co. (1979), 181 Mont. 269, 593 P.2d 438. However, appellant argues that this obligation does not extend from general contractors to subcontractors because subcontractors are able to control and influence the safety of their work place.

The District Court instructed on the safe place to work law found in §§ 50-71-201 and 50-71-202, MCA:

> 50-71-201. Employer to furnish and require safety devices and practices. Every employer shall furnish a place of employment which is safe for employees therein and shall furnish and use and require the use of such safety devices and safeguards and shall adopt and use such practices, means, methods, operations, and processes as are reasonably adequate to render the place of employment safe and shall do every other thing reasonably necessary to protect the life and safety of employees. [emphasis added]

> 50-71-202. Employer to provide and maintain safe place of employment. (1) An employer who is the owner or lessee of any real property in this state shall not construct or cause to be constructed or maintained any place of employment that is unsafe.

> (2) Every employer who is the owner of a place of employment or lessee thereof shall repair and maintain the same as to render it safe.

Appellant argues that these safe place to work statutes only apply to situations where the claim presented is brought by an employee of a subcontractor and the general contractor has control over safety. Respondent was not in an employer-employee situation because he was a subcontractor. Therefore, the safe place to work instructions should not have been given.

We must determine if the language of § 50-71-201, MCA, "a place of employment which is safe for employees," includes subcontractors in the category of employees. We believe it does.

4

It was the intent of the Legislature to include contractors in the definition of "employee." Section 92-411, R.C.M. (1947). We have already determined that §§ 50-71-201 and 50-71-202, MCA, were intended to cover employees of subcontractors. Stepanek, supra. If a subcontractor is incorporated then the subcontractor individually is an employee of the corporation and is covered. However, under appellant's rationale, if the subcontractor is not incorporated then he is not an employee and is not covered. We cannot believe this was the intent of the Legislature.

Section 50-71-202, MCA, makes no mention of "employees," but simply requires employers to provide a safe place of employment. Likewise, the emphasis in § 50-71-201, MCA, is on the "place of employment" rather than the status of the worker. Respondent, as a subcontractor, was entitled to a safe place to work. The District Court did not err by instructing the jury on §§ 50-71-201 and 50-71-202, MCA.

## MEDICAL EXPERT TESTIMONY

Appellant argues that respondent was required to prove damages by expert medical testimony. Respondent did not produce a medical expert at trial, and appellant made a motion for directed verdict. The trial court denied the motion. Appellant maintains this was error.

The trial court correctly denied the motion for directed verdict. A claimant is competent to testify as to his past and present condition. Respondent's testimony was sufficient for the jury to determine whether there was an injury. However, respondent's testimony, standing alone, is not sufficient to prove permanency where disputed and where not apparent from the injury itself. Likewise, lay testimony is not sufficient to establish cause for those aspects of an injury not apparently related to the accident in question.

5

In Zegman v. State (N.Y. 1979), 416 N.Y.S.2d 505, this rule was stated as follows:

> . . . claimant was clearly competent to testify to her past and present condition. (Vincent-Wilday, Inc. v. Strait, 273 App.Div. 1054, 79 N.Y.S.2d 811.) The Court does not however construe such testimony as sufficient to establish either the permanency of the injury or the possibility of future pain. [citations omitted]

Zegman, 416 N.Y.S.2d at 506.

Not all injuries require medical expert testimony to prove permanency or causation. It has been held that medical testimony is not necessary to prove permanent injuries or their cause where the nature of the injury is such that laymen can plainly see, or infer from the injury, its cause and that it will be permanent, such as loss of a limb. Respondent's back injury was not such an injury.

Coryell v. Conn (Wis. 1979), 276 N.W.2d 723, addresses the issue of permanency of injuries as follows:

> Where, as here, an injury is subjective and a layman cannot know if it will continue, expert medical testimony is necessary with regard to permanency and future pain and suffering. Diemel v. Weirich, 264 Wis. 265, 268, 58 N.W.2d 651 (1953).
>
> '. . . Only a medical expert is qualified to express an opinion to a medical certainty, or based on medical probabilities (not mere possibilities), as to whether the pain will continue in the future, and, if so, for how long a period it will so continue. . . .' Id. at 268, 58 N.W.2d at 652-653.

Coryell, 276 N.W.2d at 727.

In the similar case of Clifford v. Opdyke (N.J. 1978), 383 A.2d 749, the court found that presenting the issue of permanent injury to the jury was prejudicially erroneous:

> The question of the prognosis of an injury and probable permanent disability is one necessarily within the ambit of expert medical opinion (except for

> disabilities which are apparent to a layman, such as an amputated body member). And the burden of proving such permanency by competent medical testimony rests of course with plaintiff.

Clifford, 383 A.2d at 752.

The trial court presented to the jury the issue of permanent injury in instruction number 26. Appellant objected. Because of inadequate proof to support the instruction, it was error to give it. There must be a new trial, but only on the issue of damages.

Finally, respondent was found to be 18 percent negligent, however, the trial judge failed to reduce his award by this amount. The new damage award shall be reduced by 18 percent, pursuant to § 27-1-702, MCA.

The judgment is vacated and the cause remanded for a new trial on damages only.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

7