NO. 94-552

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

LORRAINE A. PORTER, individually, and as
Personal Representative of the Estate of
Robert Porter, and JEFF R. PORTER and
KIRK A. PORTER,

      Plaintiffs and Appellants,

  v.

GORDON GALARNEAU,

      Defendant and Respondent.

**FILED**

FEB 1 4 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          James P. Molloy (argued), Attorney at Law
          Helena, Montana

          Thomas E. Boland, Attorney at Law,
          Great Falls, Montana

      For Respondent:

          Maureen H. Lennon (argued), and E. Craig Daue,
          Garlington, Lohn & Robinson, Missoula, Montana

          Lee A. Henderson, Hessian, McKasy & Soderberg,
          Minneapolis, Minnesota

Submitted:  November 16, 1995

Decided:   February 14, 1996

Filed:

Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

This is an appeal from orders issued by the Thirteenth Judicial District Court, Yellowstone County, granting the defendant's motions for summary judgment. We affirm in part and reverse in part.

We restate the issues on appeal as follows:

1. Did the District Court err in determining that Montana's Scaffolding Act did not apply?

2. Does House Bill 158, which amended Montana's Scaffolding Act, apply retroactively to this case?

3. Did the District Court err in determining that Gordon Galarneau did not have a duty to provide Robert Porter with a safe work place?

4. Did the District Court err in determining that Gordon Galarneau did not breach any common law duty as a landowner?

5. Did the District Court err in not allowing Lorraine Porter to fully amend the complaint?

FACTS

Robert and Lorraine Porter operated Personal Touch Services, a business in Billings that provided cleaning and maintenance services to commercial and residential customers. Gordon Galarneau is a Minnesota businessman who owns a business and residence in Billings. In 1986, Gordon engaged the Porters to perform various services for himself and Rinda Penrod, his wife. In 1988, Gordon sold his Billings residence but then repurchased the home in

May 1992, at which time the Porters were again hired to perform miscellaneous jobs at the residence. Robert and Lorraine did a variety of work for Gordon and Rinda, including cleaning, grounds maintenance, repairs, and painting. The Porters were responsible for opening the house for contractors and delivery men, as well as leaving vehicles at the Billings airport when Gordon and Rinda arrived in town.

In late November 1992, the parties agreed that Robert would paint an interior wall of the Billings house which was approximately twenty-two feet high. The floor of the room to be painted was tile. Lorraine testified that on the morning of November 30, 1992, Gordon told her that scaffolding was not necessary and that Robert should use a ladder for the job. Gordon denies this conversation ever took place. On December 3, 1992, Robert borrowed a ladder from his landlord and while preparing the wall for painting, fell from the ladder and was fatally injured. He died later that day at a Billings hospital. When Robert fell from the ladder Gordon was at his office in Minnesota and Rinda was in an upstairs bathroom of the Billings residence. Lorraine was working at another location and Kirk Porter, Robert's son, was on his way to help his father paint the wall. No one witnessed Robert's fall. Following Robert's death, Gordon terminated the working relationship with Lorraine and Kirk.

On April 26, 1993, Lorraine and her sons, Jeff and Kirk, brought this action to recover damages for Robert's wrongful death

3

and for Lorraine's and Kirk's wrongful termination of employment. Kirk subsequently abandoned his wrongful termination claim. The wrongful death claims alleged liability theories of negligence, violation of Montana's Scaffolding Act, and failure to provide a safe place to work. In a memorandum and order dated April 22, 1994, the District Court granted Gordon's motion for summary judgment on the wrongful death claims and denied summary judgment on Lorraine's wrongful termination claim.

Prior to the District Court's order, Lorraine filed a motion to amend the complaint seeking to allege alternate theories of liability. In a memorandum and order dated April 28, 1994, the District Court denied most of Lorraine's proposed amendments but allowed her to amend the complaint to include a claim that Robert was a common law employee covered by Montana's Safety Act. Gordon subsequently renewed his motion for summary judgment on the basis that Robert was not an employee within the meaning of the Safety Act. On August 26, 1994, the District Court granted Gordon's motion for summary judgment, entered final judgment in favor of Gordon on the wrongful death claims, and stayed further proceedings on Lorraine's wrongful termination claim. Lorraine appeals the District Court's orders granting Gordon's motion for summary judgment on the wrongful death claims.

STANDARD OF REVIEW

Our standard of review in appeals from summary judgment rulings is de novo. Mead v. M.S.B., Inc. (1994), 264 Mont. 465,

4

470, 872 P.2d 782, 785. Under Rule 56(c), M.R.Civ.P., summary judgment is proper if the record discloses no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Lutey Const. v. State (1993), 257 Mont. 387, 389, 851 P.2d 1037, 1038. A party seeking summary judgment has the burden of establishing a complete absence of any genuine factual issues. Howard v. Conlin Furniture No. 2, Inc. (Mont. 1995), 901 P.2d 116, 118, 52 St. Rep. 814, 815. Once the moving party has presented evidence to support its motion, the party opposing summary judgment must present material and substantial evidence, rather than conclusory or speculative statements, to raise a genuine issue of material fact. Howard, 901 P.2d at 119. All reasonable inferences that might be drawn from the offered evidence should be drawn in favor of the party opposing summary judgment. Howard, 901 P.2d at 119.

## ISSUE 1

Did the District Court err in determining that Montana's Scaffolding Act does not apply?

Lorraine alleges that Gordon violated Montana's Scaffolding Act, §§ 50-77-101 to -107, MCA (1991). The District Court determined as a matter of law that Gordon did not exercise the necessary degree of supervision or control to impose liability under the Scaffolding Act.

Section 50-77-101, MCA (1991), states that:

> All scaffolds erected in this state for use in the
> erection, repair, alteration, or removal of buildings

5

> shall be well and safely supported, of sufficient width, and properly secured so as to ensure the safety of persons working on them or passing under them or by them and to prevent them from falling or to prevent any material that may be used, placed, or deposited on them from falling.

Additionally, § 50-77-102, MCA (1991), states that it is the duty of "every owner, person, or corporation who shall have the direct and immediate supervision or control of the construction or remodeling" to provide safe and adequate scaffolding. We have defined "scaffolding" to include "any device utilized by workmen to allow them to work where a fall might result in serious injury." Steiner v. Dept. of Highways (1994), 269 Mont. 270, 276, 887 P.2d 1228, 1233 (citing Mydlarz v. Palmer/Duncan Const. Co. (1984), 209 Mont. 325, 338, 682 P.2d 695, 702).

Lorraine argues that a ladder clearly falls under our definition of scaffolding and that control for Scaffolding Act purposes is automatically established by the employment relationship which existed between the parties. Lorraine relies on Pollard v. Todd (1966), 148 Mont. 171, 418 P.2d 869, to assert that, as an employer, Gordon had a nondelegable duty and concomitant right of control over Robert's work. In Pollard, the defendants hired a carpenter to construct a grain storage building on their property. When a carpenter's helper was injured in a fall from a ladder and plank scaffold we held that the defendants were liable under the Scaffolding Act. We concluded the defendants had actual control of the work because they had discussed the scaffolding needs of the project with the carpenter who was

6

supervising the job and had not objected to the use of the ladder scaffold. Pollard, 418 P.2d at 871-72.

Gordon maintains that an employer is not necessarily the person or entity having the direct and immediate control of the work involving the scaffolding necessary to create liability under the Scaffolding Act. Gordon relies on our holding in State ex rel. Great Falls Nat'l Bank v. District Court (1969), 154 Mont. 336, 463 P.2d 326, to argue that the purpose of the Scaffolding Act is to create liability on the "person, firm, or corporation having direct and immediate control of the work involving the use of the scaffolding." Great Falls Nat'l Bank, 463 P.2d at 331.

Gordon contends that outside of asking Robert to paint the wall, he (Gordon) had no contact with or control over the work involving the scaffolding. He argues that Robert did not consult with him prior to undertaking the project and that Robert alone obtained the ladder and arranged for Kirk to assist him, which resulted in Robert assuming complete responsibility for the job. In urging us to affirm the District Court's grant of summary judgment, Gordon argues that even if the issue of control is a question of fact, where reasonable minds could not differ the district court may determine questions of fact as a matter of law. Brohman v. State (1988), 230 Mont. 198, 202, 749 P.2d 67, 70.

The District Court, in its April 22, 1994, memorandum and order, stated "there are material facts which support finding that the Porters were both independent contractors and employees of

7

defendant." In its August 26, 1994, memorandum and order, the District Court stated that "this [c]ourt will take as true for purposes of defendant's motion that decedent was a resident or common **law** employee at the **time** he fell to his death . . . ." For purposes of this appeal, therefore, we will consider Robert to have been an employee of Gordon.

We have previously held that under the pre-1995 version of the Scaffolding Act, a ladder is considered a scaffold. Mydlarz, 682 P.2d at 702-03. Both parties have assumed employment status for the purposes of the summary judgment motion. Since under that assumption Robert was Gordon's employee at the time he fell to his death, we must therefore recognize the inherent nature of the employment relationship. As Robert's employer, Gordon was the only individual who could provide direction and supervision. To accept Gordon's argument that Robert supervised himself would require us to ignore the basic element of an employer-employee relationship. We determine that Gordon had direct and immediate supervision or control of Robert's work for the purposes of the Scaffolding Act.

We distinguish the present case from our holding in Great Falls Nat'l Bank by noting that the bank was simply the owner of the property and had no direct control over the work performed. There, an independent contractor had been hired to complete the project under its own guidance and supervision. The individual who was injured was an employee of the contractor, not the bank. Here, Gordon was both the property owner and Robert's employer. Even

8

though Gordon denies having any control over the painting project, he was responsible for assigning duties and tasks to the Porters. Robert had no one else to look to for direction and guidance.

We conclude that the District Court erred in determining that as a matter of law Gordon did not exercise the degree of supervision or control necessary to impose liability under the Scaffolding Act, and reverse the District Court on that issue.

ISSUE 2

Does House Bill 158, which amended Montana's Scaffolding Act, apply retroactively to the facts of this case?

We must now decide whether a recent amendment to the Scaffolding Act should be applied retroactively to this case. On April 13, 1995, the Governor signed House Bill 158 which significantly revised the Scaffolding Act. Among other things, H.B. 158 specifically excluded an ordinary ladder from the definition of scaffolding.

Gordon urges us to apply the amendment retroactively which would remove this case from the scope of the Scaffolding Act since the accident involved the use of a ladder. Gordon relies on the canon of statutory construction which states that courts should apply the law in effect at the time it renders its decision, citing Haines Pipeline Const., Inc. v. Montana Power Company (1991), 251 Mont. 422, 830 P.2d 1230. He goes on to argue that application of the amended law would not constitute an impermissible retroactive application of H.B. 158 since it would not result in manifest

9

injustice, defeat or impair a vested right, or create a new obligation, impose a new duty, or attach a new disability.

Lorraine urges us not to apply H.B. 158 retroactively to this case, relying on § 1-2-109, MCA, which is a codification of the canon of statutory construction which states that a statute is not retroactive unless expressly so declared. Lorraine argues that the legislature did not expressly declare H.B. 158 to be retroactive and also contends that the amendment is substantive in nature and "alters the legal relationship" between the parties.

These two conflicting canons of statutory construction have caused confusion at both the state and federal levels. Both parties cite federal cases which discuss these canons, as well as several Montana cases which cite one canon or the other with no effort to harmonize the two. We take this opportunity to review the pertinent cases and clarify the effect of these two canons in Montana.

As this Court has relied on federal authority in this area, a discussion of the federal cases is necessary. At the federal level, the U.S. Supreme Court has reaffirmed the validity of the traditional judicial canon that "retroactivity is not favored by the law" and that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." Bowen v. Georgetown Univ. Hosp. (1988), 488 U.S. 204, 109 S. Ct. 468, 102 L. Ed. 2d 493. The seemingly contradictory canon is that "a court is to apply the law

10

in effect at the time it renders its decision . . . ."  Bradley v. Richmond Sch. Bd. (1974), 416 U.S. 696, 711, 94 S. ct. 2006, 2016 40 L. Ed. 2d 476, 488; Thorpe v. Housing Auth. of Durham (1969), 393 U.S. 268, 281, 89 S. Ct. 518, 526, 21 L. Ed. 2d 474, 484.

We will first address the canon which is codified in Montana at § 1-2-109, MCA, which provides that a statute is not retroactive unless expressly so declared.  A statute does not operate "retroactively" merely because it is applied in a case arising from conduct antedating the statute's enactment.  Landgraf v. US1 Film Prods. (1994), 114 S. Ct. 1483, 128 L. Ed. 2d 229.  This Court has defined a "retroactive law" to be "one which takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions already passed."  Continental Oil Co. v. Montana Concrete Co. (1922), 63 Mont. 223, 207 P.116; Wallace v. Dept. of Fish, Wildlife and Parks (1995), 269 Mont. 364, 889 P.2d 817.  In St. Vincent Hospital v. Blue Cross (1993), 261 Mont. 56, 862 P.2d 6, we stated that a "retroactive law" was one which gave a "transaction a different legal effect from that which it had under the law when it occurred."  St. Vincent Hosp., 862 P.2d at 9.

In this case, we need go no further than that portion of H.B. 158 which excludes an ordinary ladder from the definition of scaffold.  At the time of the accident, the pre-1995 Scaffolding Act applied to this factual situation (see discussion, Issue 1).  If we applied H.B. 158 (which excludes ladders from the definition

11

of a scaffold) to the accident in this case, the Scaffolding Act would not apply. This would result in a different legal effect from that which the accident had under the law when it occurred. St. Vincent Hosp., 862 P.2d at 9. House Bill 158 is therefore a "retroactive law" and cannot be applied in this case.

We now address the seemingly contradictory canon relied on by Gordon which was cited by this Court in West-Mont Community Care v. Board of Health (1985), 217 Mont 178, 703 P.2d 850; Lee v. Flathead County (1985), 217 Mont. 370, 704 P.2d 1060; Haines Pipeline; McNeil v. Currie (1992), 253 Mont. 9, 830 P.2d 1241; and Day v. Child Support Enforcement Div. (Mont 1995), 900 P.2d 296, 52 St. Rep. 680. In these cases, this Court relied on Thorpe for the general rule that "an appellate court must apply the law in effect at the time it renders its decision." This general rule in Thorpe has recently been both criticized and clarified by the U.S. Supreme Court. See Landgraf; Kaiser Aluminum & Chemical Corp. v. Bonjorno (1990), 494 U.S. 827, 110 S. Ct. 1570, 108 L. Ed. 2d 842.

In Boniorno, Justice Scalia, in a concurring opinion, chronicles the prior Supreme Court retroactivity cases and makes a persuasive argument that the Court in Thorpe simply adopted an erroneous rule by misinterpreting the Court's decision in United States v. Schooner Peggy (1801), 5 U.S. (1 Cranch) 103, 2 L. Ed. 49. Thorpe, for the first time, extended the rule that a court will apply the law in effect at the time of its decision to statutory changes. The canon created by the Thorpe case is

12

therefore of relatively recent vintage. Justice Scalia noted that the initial confusion created by Thorpe was expanded by the Court's subsequent decision in Bradley. Justice Scalia's analysis of Thorpe and Bradlev indicates that the authority relied on by the U.S. Supreme Court in both cases involved the retroactive application of judicial decisions, rather than statutes. Boniorno, 494 U.S. at 849.'

In Landsraf, the U.S. Supreme Court attempted to reconcile the two conflicting lines of authority regarding retroactivity. The **majority** opinion clarified that Thorpe and Bradlev were not intended to alter the well-settled presumption against the application of statutes that have a genuine retroactive effect. Landsraf, 114 S. Ct. at 1503. The Court noted that the authorities it relied on in Bradlev

> lend further support to the conclusion that we did not intend to displace the traditional presumption against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment.

Landgraf, 114 S. Ct. at 1504.

While Landgraf modified the Thorpe and Bradley rule, it continues the existence of two conflicting rules of statutory construction involving retroactivity and does little to remove the

---

[1]In Landuraf, Justice Scalia stated: "As I have demonstrated elsewhere and need not repeat here, Bradlev and Thorpe v. Housing Authority of Durham, 393 U.S. 268, 89 S. Ct. 518, 21 L. Ed. 2d. 474 (1969), simply misreads our precedents and invented an utterly new and erroneous rule. See generally Boniorno, 494 U.S. at 840, 110 S. ct. at 1578-79 (SCALIA, J. concurring)." Landgraf, 114 S. Ct. at 1523.

13

confusion caused by the conflicting canons.  We believe that Justice Scalia's analysis in Bonjorno and Landgraf where he found that Thorpe and Bradley simply misapplied the retroactivity rule is the better analysis.  The application of the Thorpe and Bradley rule has needlessly confused the area of retroactivity at both the state and federal levels.  We therefore limit the application of the rule set forth in Thorpe and Bradley to those cases involving the retroactive application of judicial decisions.

In West-Mont, Lee, and Haines Pipeline this Court specifically relied on Thorpe to retroactively apply changes in state administrative rules or statutes and to the extent these cases are inconsistent with this opinion, they are overruled.*  In Day we correctly applied Thorpe in its federal context to a federal statute.  In McNeil, this Court relied on Thorpe to retroactively apply a judicial decision which is consistent with our ruling in this case.

The Thorpe holding is therefore inapplicable to situations involving the retroactive application of a state statute, ordinance or regulation.  We will continue to give retroactive effect to judicial decisions, which is in accord with the U.S.  Supreme

---

[2]While the following cases do not expressly rely on Thorpe, they rely on the Thorpe rule as set forth in Haines Pipeline, West-Mont and/or Lee.  To the extent these cases are inconsistent with this opinion, they are overruled as well:  Ihler v. Chisholm (1993), 259 Mont. 240, 855 P.2d 1009; Brockie v. Omo Const., Inc. (1994), 268 Mont. 519, 887 P.2d 167; In re Marriage of Elser (1995), 271 Mont. 265, 895 P.2d 619; AgAmerica, FCB v. Robson (Mont. 1995), 901 P.2d 100, 52 St. Rep. 800.

14

Court's holding in Harper v. Virginia Dept. of Taxation (1993), 113 S. Ct. 2510, 125 L. Ed. 2d 74.

In summary, the canon of statutory construction found at § 1-2-109, MCA, requires that a statute will not be given "retroactive effect" unless the legislature expressly declares the statute to be retroactive. A "retroactive law" is one which takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty, attaches a new disability in respect to transactions already passed, or gives a transaction a different legal effect from that which it had when it occurred. Continental Oil Co., 207 P. at 118; St. Vincent Hosp., 862 P.2d at 9. The adoption of H.B. 158, enacted in 1995, would produce a different legal result and therefore constitutes a "retroactive law," and cannot be applied to the 1992 accident involving Robert Porter.

ISSUE 3

Did the District Court err in determining that Gordon Galarneau did not have a duty to provide Robert Porter with a safe work place?

Lorraine alleges that Gordon had both a common law duty and, pursuant to Montana's Safety Act, §§ 50-71-101 to -334, MCA (1991), a statutory duty to provide a safe work place. Lorraine relies on Reynolds v. Burlington Northern, Inc. (1980), 190 Mont. 383, 621 P.2d 1028, and Pollard to argue that the duty to provide a safe work place originates at common law. Lorraine further relies on

15

Cain v. Stevenson (1985), 218 Mont. 101, 706 P.2d 128, to argue that the Safety Act imposes a duty to provide a safe work place.

The District Court determined that even though Robert was a resident or common law employee for purposes of the summary judgment motion, he was "not one hired in defendant's regular business." The District Court also determined that as a "casual," "household," or "domestic" employee Robert was not covered under the provisions of the Safety Act."

In urging us to affirm the District Court, Gordon maintains that Robert had unfettered access to safe tools and equipment and that it was Robert who selected the ladder and supplies for the painting job. Gordon claims it was Robert's error in judgment and not his (Gordon's) breach of a common law duty to provide a safe work place that led to the unfortunate accident. Gordon also argues that the Safety Act excludes from its definition of "employee" individuals who perform household or domestic service as well as, under certain circumstances, "casual employees."

We have stated that "[i]t is an elementary principle that an employer must provide its employees with a safe place to work." Reynolds, 621 P.2d at 1037. We have also stated that "[t]his Court has consistently held that the master has a duty to use reasonable care to provide a reasonably safe place for his servants to work

---

[3]Section 50-71-102(4), MCA, in the Safety Act incorporates the definition of "employee" found in the Montana Workers' Compensation Act in § 39-71-118, MCA. Under that definition, "household and domestic" employees are excluded as are "casual" employees under certain circumstances.

and to provide reasonably safe tools and appliances with which to perform the tasks assigned." Pollard, 418 P.2d at 872. In Cain, we held that a general contractor had a duty under the Safety Act to provide a subcontractor with a safe work place and noted that "[s]ection 50-71-202, MCA, makes no mention of 'employees,' but simply requires employers to provide a safe place of employment." Cain, 706 P.2d at 131.

Both the District Court and this Court have considered Robert an employee for purposes of Gordon's motion for summary judgment. We therefore conclude that Gordon had a common law duty to provide a safe place to work. We also conclude that a duty under the Safety Act potentially exists. We have stated that the "emphasis in § 50-71-201, MCA, is on the 'place of employment' rather than the status of the worker." Cain, 706 P.2d at 131. However, household and domestic service employees, and under certain circumstances casual employees, are exempt by statute from protection under the Safety Act.

We therefore conclude that the nature and definition of Robert's employment status is key to determining if a duty under the Safety Act exists. We further determine this to be a question of fact which must be submitted to the jury. The District Court erred in granting summary judgment on the issue of whether Gordon had a duty under common law or the Safety Act to provide a safe work place and we reverse the District Court on this issue. We hold that Gordon did have a common law duty to provide a safe place

17

to work and we remand the issue of whether Robert was covered under the Safety Act for a jury determination.

ISSUE 4

Did the District Court err in determining that Gordon Galarneau did not breach any common law duty as a landowner?

All property owners have a duty to use ordinary care in maintaining their premises in a reasonably safe condition and to warn of any hidden or lurking dangers. Davis v. Church of Jesus Christ of Latter Day Saints (1990), 244 Mont. 61, 67, 796 P.2d 181, 184. The District Court determined there was no evidence Gordon had breached his common law duty of care as a property owner.

Lorraine argues that the District Court's analysis is incomplete and contends that property owners have a duty to protect business/invitee workers from open and obvious dangers. Lorraine maintains that Gordon and Rinda created a hazardous condition because they were anxious to get the painting completed before guests arrived for the holiday season, and therefore, Robert was rushed into completing the job. Gordon counters he did not violate his common law duty as a landowner and that any hazardous condition that may have been created was due to Robert's own acts or omissions.

We conclude that Gordon had no common law duty beyond that of maintaining his premises in a reasonably safe condition and to warn of hidden or lurking dangers. The record reveals no evidence to support a finding that Gordon breached his duty of ordinary care as

18

a landowner. We therefore affirm the District Court's grant of summary judgment on this issue.

ISSUE 5

Did the District Court err in not allowing Lorraine Porter to fully amend the complaint?

Under Rule 15(a), M.R.Civ.P., "leave shall be freely given when justice so requires" to allow a party to amend a complaint. A court is justified in denying a motion to amend if the proposed amendment is futile. Lindey's v. Professional Consultants (1990), 244 Mont. 238, 242, 797 P.2d 920, 923. The standard of review employed by this Court when reviewing a district court's denial of a motion to amend the pleadings is whether the district court abused its discretion. United Methodist Church v. D.A. Davidson (1987), 228 Mont. 288, 292, 741 P.2d 794, 797.

Approximately one month before trial Lorraine filed a motion to amend the complaint. As discussed in Issue 3 above, the District Court granted the motion with respect to alleging a violation of the Montana Safety Act. However, the District Court denied Lorraine the opportunity to claim Robert was an independent contractor. Lorraine sought to plead and attempt to prove alternative theories of liability based on Robert's status as either an employee or an independent contractor. See Rule 8(a) and (e), M.R.Civ.P. The District Court determined it would be futile to amend the complaint. Without determining whether or not the District Court abused its discretion in denying Lorraine's

19

motion to amend the complaint, we conclude in light of our remand of this case that Lorraine should be allowed to amend the complaint to allege alternate theories of liability based on Robert's status as an employee or independent contractor. Since the District Court will set a new trial schedule and new discovery deadlines, the parties will not be prejudiced by such action. We therefore reverse the District Court on this issue.

We remand this case to the District Court for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

_____
District Court Judge Thomas C. Honzel
sitting in place of Justice William E. Hunt, Sr.

20

Justice Karla M. Gray, specially concurring.

I join in the Court's opinion on all issues. I write separately in order to state that my concurrence in issue one of that opinion, relating to the applicability of the Scaffolding Act, is specifically limited to resolution of the issue as raised and argued by the parties.

I am not convinced that either the plain language of, or the legislative intent underlying, the Scaffolding Act renders it applicable to the facts of the present case. The Act appears in the Montana Code Annotated as Chapter 77, entitled "Construction Site Health and Safety," of Title 50. Sections 50-77-101 and 50-77-102, MCA, are at issue in this case. Section 50-77-101, MCA, specifically encompasses "[a]ll scaffolds erected in this state for use in the erection, repair, alteration, or removal of buildings. . ." Section 50-77-102, MCA, imposes the statutory duty on the person or entity having direct and immediate supervision or control "of the construction or remodeling of any building having more than three framed floors. . ."

It is not at all clear to me that painting a wall in a residence constitutes the "erection, repair, alteration, or removal" of a building under § 50-77-101, MCA. It is, at best, equally unclear that the wall-painting project constitutes the "construction or remodeling of [a] building having more than three framed floors" under § 50-77-102, MCA. Moreover, our cases addressing the Scaffolding Act involve factual scenarios such as the construction of an automobile dealership building, the construction of a multi-purpose recreational facility, and the

21

exterior renovation of a bank building.   See, e.g., Mydlarz v. Palmer/Duncan Const. Co. (1984), 209 Mont. 325, 682 P.2d 695; Stepanek v. Kober Const. (1981), 191 Mont. 430, 625 P.2d 51; State ex rel. Great Falls Nat. Bank v. District Court (1969), 154 Mont. 336, 463 P.2d 326.

This threshold issue relating to the applicability of the Scaffolding Act was not raised in the District Court and is not before us on appeal; thus, we may not properly address it.   Nor do my statements here express a view that the Act does not apply to these facts.   I raise the issue only to indicate that my agreement with both the analysis and the result of the Court's opinion on the issue raised regarding applicability of the Act is tempered by discomfort that the threshold--and, at least, potentially dispositive--issue cannot be addressed here.

_____
Justice

22

February 14, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

THOMAS E. BOLAND
Attorney at Law
P.O. Box 2949
Great Falls, MT 59403-2949

JAMES P. MOLLOY
Attorney at Law
303 N. Ewing Street
Helena, MT 59601

Maureen H. Lennon & E. Craig Daue
GARLINGTON, LOHN & ROBINSON
P.O. Box 7909
Missoula, MT 59807-7909

Lee A. Henderson
HESSIAN, McKASEY & SODERBERG
4700 IDS Center
Minneapolis, Minnesota 55402

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _A. Gallagher_
Deputy