No. 96-404

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE THE MARRIAGE OF

THOMAS L. WOEHL,

  Petitioner and Respondent,

 v.

WENDI A. WOEHL, n/k/a
WENDI A. THORSON,

  Respondent and Appellant.

APPEAL FROM: District Court of the First Judicial District,
      In and for the County of Lewis and Clark,
      The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

  Thomas S. Winsor, Winsor Law Firm, Helena, Montana

  For Respondent:

    James P. Reynolds, Reynolds, Motl & Sherwood,
    Helena, Montana

FILED

Filed: JAN 0 3 1997

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: November 21, 1996

Decided: January 3, 1997

_____
      Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Appellant Wendi A. Woehl, n/k/a Wendi A. Thorson, (Wendi) appeals from the findings of fact, conclusions of law and order issued by the First Judicial District Court, Lewis and Clark County, denying Wendi's motion to restore custody and granting the motion of Thomas L. Woehl (Tom) for modification of custody.

We affirm.

Wendi presents two issues for our review:

1. Did the District Court abuse its discretion in determining that there was sufficient evidence for modification of custody under the standard expressed in § 40-4-219, MCA?

2. Did the District Court err in refusing to grant Wendi attorney fees and costs?

## FACTS

Tom and Wendi's marriage was dissolved pursuant to a decree issued December 17, 1993, by the First Judicial District Court, Lewis and Clark County. The decree provided that Tom and Wendi would share joint custody of their three minor children: Malinda, Darin, and Bradlee. Wendi was granted residential custody of the

2

children during the school year, while Tom was allowed scheduled visitation during the school year and was granted four weeks physical custody of the children during the summer. In May 1995, the parties agreed to amend the decree to allow Tom physical custody of the children for three separate one-month periods each year.

After the marriage was dissolved, Wendi and the children lived with her boyfriend, Ron Farrell (Ron), and his two children in Wendi's mobile home in a mobile home court. Beginning in March 1995, the mobile home's septic system faltered, and soon stopped working altogether. Because of the septic problems, the owner of the mobile home court shut off the water and septic service to Wendi's mobile home.

The inconveniences at the mobile home led Wendi to ask Tom to take Malinda, Darin, and Bradlee from June 1995 to August 1995. When Tom returned the children to Wendi's care he discovered that the problems with the mobile home had not been corrected. When the problems had not been corrected after two more weeks, Tom moved the District Court for an order placing the children temporarily in his custody. The court granted Tom's motion pending a hearing set for October 25, 1995.

At the October 25, 1995 hearing, Wendi testified that the mobile home problems had not yet been corrected. Tom presented evidence regarding his concerns about the quality of care Wendi was providing the children, specifically that Wendi was often late picking the children up from school. The hearing ended without

3

other witness testimony when the court granted Wendi's request for a continuance. The court ordered that the temporary custody order would remain in effect.

In December 1995, the court appointed J. Bailey Molineux, Ph.D., to conduct a custody evaluation, an appointment approved by counsel for both parties. Dr. Molineux had previously counseled Tom and Wendi both before and after their divorce, and had, in 1994, counseled Ron and Wendi.

Pursuant to the court's December 1995 order, Dr. Molineux met with Tom, Wendi and the children. In a letter dated December 19, 1995, Dr. Molineux set forth his recommendations to the court. Dr. Molineux recommended that, in every two-week period, Tom have custody of the children for six consecutive days and that Wendi have custody the remaining eight days. Dr. Molineux also recommended that Tom and Wendi become involved in custody counseling, and that Ron and Wendi's relationship, as well as Ron's relationship with the children, be evaluated by a family therapist. Dr. Molineux closed his letter of recommendation by stating "[b]oth parents have agreed to what I have recommended as I was able to get them to develop their own custody arrangement rather than have it decided for them."

On January 10, 1996, Wendi moved the court to restore her primary residential custodian status. Wendi stated in the memorandum attached to her motion that she had moved into another mobile home which was equipped with running water and a working septic system. Wendi also stated that Dr. Molineux's

4

recommendations had not identified any evidence that the children were seriously endangered. On January 30, Tom responded, requesting that the court deny Wendi's motion and order that Dr. Molineux's recommendations be implemented.

On April 24, 1996, the court heard testimony concerning Wendi's motion to restore custody and Tom's motion to modify custody in conformance with Dr. Molineux's recommendations. On June 4, 1996, the court issued its findings of fact, conclusions of law and order, wherein it denied Wendi's motion, granted Tom's motion, established a custody arrangement and adopted Dr. Molineux's custody counseling recommendations. Wendi appeals.

## ISSUE ONE

Did the District Court abuse its discretion in determining that there was sufficient evidence for modification of custody under the standard expressed in § 40-4-219, MCA?

"We review a district court's findings relating to custody modification, to determine whether those findings are clearly erroneous." In re the Marriage of Elser (1995), 271 Mont. 265, 270, 895 P.2d 619, 622 (citation omitted), *overruled on other grounds by* Porter v. Galarneau (1996), 275 Mont. 174, 185, 911 P.2d 1143, 1150 n.2. When findings upon which a decision is predicated are not clearly erroneous, "we will reverse a district court's decision to modify custody only where an abuse of discretion is clearly demonstrated." Elser, 895 P.2d at 622 (citation omitted). A finding is clearly erroneous only if it is not supported by

5

substantial evidence, the trial court has misapprehended the effect of the evidence, or a review of the record leaves this Court with the "definite and firm conviction" that a mistake has been committed. Interstate Production Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

A motion to modify a joint custody decree which substantially changes the primary residence of the children, but which maintains the joint custody designation, must meet the jurisdictional requirements of § 40-4-219, MCA. In re the Marriage of Johnson (1994), 266 Mont. 158, 166, 879 P.2d 689, 694. According to Johnson, the court here could not properly have proceeded to modify the custody arrangement unless and until the requirements of § 40-4-219, MCA, had first been met. The statute provides in relevant part:

> **Modification.** (1) The court may in its discretion modify a prior custody decree if it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or the child's custodian and that the modification is necessary to serve the best interest of the child and if it further finds that:
>
> . . . .
>
> (c) the child's present environment endangers seriously the child's physical, mental, moral, or emotional health and that the harm likely to be caused by a change of environment is outweighed by its advantages to the child; . . . .

Section 40-4-219(1)(c), MCA.

The court heard a considerable amount of testimony from Dr. Molineux and others concerning the children's environment when in

6

Wendi's care. Sometime after the brief October 25 hearing, Wendi moved into another mobile home, this one apparently entirely habitable; however, Wendi shared the home with Ron, Ron's two children, and two unrelated males. Dr. Molineux testified that he had counseled Wendi and Ron about fighting problems some two years prior, and that his custody evaluation undertaken for the present case revealed that fighting was still a problem. Dr. Molineux testified that the children told him they were afraid of Ron. Dr. Molineux also testified that continued fighting between Wendi and Ron would negatively impact the children's emotional health.

The court also heard testimony concerning the children's environment when in Tom's care. Tom lives with his mother in a home where fighting and arguing are apparently not a problem. Tom's girlfriend Dawn Williams is acquainted with the children and has often picked them up from school. Tom has worked at Albertson's supermarket for ten years.

The evidence in this case overwhelmingly supports the court's conclusion that the jurisdictional prerequisite criteria of § 40-4-219, MCA, were met. The District Court's conclusion, and our conclusion here to affirm, are both supported by this Court's decision in In re the Custody of DuMont (1985), 216 Mont. 118, 700 P.2d 167. In DuMont, factually similar to this case, we affirmed the district court's order changing residential custody from the mother to the father, and described the proof required to substantiate a charge of endangerment:

> The District Court may not modify custody on considerations of best interests and change in

circumstances if it has not found at the outset that the child's welfare is seriously endangered by the present custody arrangement. In re the Marriage of Sarsfield (Mont. 1983), 671 P.2d 595, 599, 40 St. Rep. 1736, 1739. **A potential for or a probability of serious harm is sufficient to satisfy this jurisdictional prerequisite, that is, this Court will not interpret the provisions of the modification statute so narrowly as to prevent trial courts from assuming jurisdiction over modification petitions where substantial, credible evidence of potential danger is presented by a petitioner during the case-in-chief.** *Sarsfield*, 671 P.2d at 602.

DuMont, 700 P.2d at 170 (emphasis added).

The court's findings indicate the potential harm to the children if the existing custody arrangement were to be maintained. The court's findings are supported by substantial evidence, and its conclusion that the requirements of § 40-4-219, MCA, were met is supported by our decision in DuMont. The court did not abuse its discretion.

**ISSUE TWO**

Did the District Court err in refusing to grant Wendi attorney fees and costs?

Section 40-4-219(5), MCA, provides that "[a]ttorney fees and costs must be assessed against a party seeking modification if the court finds that the modification action is vexatious and constitutes harassment." Wendi argues that in moving to modify custody at a time when Wendi was experiencing difficulties with her mobile home, Tom was unfairly taking advantage of her predicament. Wendi contends that, under the circumstances, Tom's actions in moving for modification constituted harassment, and that therefore,

8

according to § 40-4-219(5), she is entitled to attorney fees. We disagree.

First, Tom's motion was meritorious, as the District Court's order granting the motion and this Court's affirmance indicate. Second, Tom in no way took advantage of Wendi, but in fact initially helped her when the mobile home problems were first revealed. Later, when the problems were still not resolved, Tom moved to modify custody. The court did not err in refusing to grant Wendi attorney fees and costs.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

9