No. 97-621

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 166N

IN RE THE MARRIAGE OF

RHONDA M. (HUSTON) BUCK,

Petitioner and Appellant,

and

DANIEL A. HUSTON,

Respondent and Respondent.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Beaverhead,

The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robyn L. Weber, Helena, Montana

For Respondent:

Patrick T. Gallagher, Anaconda, Montana

Submitted on Briefs: April 2, 1998

Decided: June 30, 1998

Filed:

_____

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

**¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases.**

**¶2 Rhonda M. Buck (Rhonda) appeals from the findings, conclusions and order of the Fifth Judicial District Court, Beaverhead County, denying her motion to modify the decree of dissolution. We affirm.**

**¶3 Rhonda and Daniel A. Huston married on June 11, 1994, in Deer Lodge, Montana, when Rhonda was approximately sixteen years old, and Daniel was approximately seventeen years old. Both were still in high school. Two children were**

born of their marriage: Taylor was born on October 13, 1994, and Beau was born on January 12, 1996. The marriage ended after three years. On April 14, 1997, the District Court held a final hearing on the petition for dissolution of marriage, and on April 16, 1997, it entered a decree of dissolution. As part of the decree, the District Court also resolved custody and visitation rights concerning the two minor children. It awarded Rhonda and Daniel joint custody, with Rhonda to be the physical custodian. It ordered Daniel's visitation rights to be liberal. Visitation was to include but not be limited to (1) two weekends a month beginning on Fridays at 6:00 p.m. and terminating on Sundays at 9:00 p.m., (2) an extended summer visitation of at least 30 days, (3) the annual Christmas-New Year's holiday, to be divided equally, (4) and all other holidays and special occasions alternated by agreement. In the memo accompanying the decree, the court admonished the parents concerning their immaturity and their inability to minimize their conflict over visitation rights, to the detriment of the children. It noted that Rhonda's denial of visitation rights to Daniel was inexcusable, and that Daniel's reaction of demanding actual custody was unrealistic. It also found that Rhonda's expressed fear of the "emotional well being" of the children was unsupported by any evidence and that evidence of Daniel's alleged drinking was unpersuasive. Finally, the court stated that Daniel's concern about his mother-in-law's religion was equally unfounded. It held that Daniel was to be involved equally in all matters involving the children's welfare, and that joint custody was in the best interest of the children. Neither party appealed the District Court's decree.

¶4 Subsequently, on May 16, 1997, Rhonda filed a motion to modify the April 16, 1997 decree, seeking to terminate Daniel's joint custody rights and all his visitation rights, unless visitation were supervised by her or by a third person designated by her. She claimed that facts had arisen since the original hearing, including the fact that Daniel had a criminal charge pending against him, which were seriously detrimental to her children's physical, mental, moral and emotional health. In turn, Daniel also filed a motion to modify the decree, requesting that the court name him the primary custodian of the children, because Rhonda had consistently denied him visitation rights. The District Court entered its findings, conclusions and order on July 28, 1997, affirming the April 16, 1997 decree. The court found no persuasive or new evidence to modify the decree. It found that while Daniel was less than a dutiful husband during the marriage, there was no evidence that he was less than a caring, loving father, and that allegations to the contrary appeared to be a spiteful afterthought instigated by Rhonda's family following the original decree. Continued

visitation would not endanger the children's physical, mental, moral and emotional health. With regard to the criminal charge pending against Daniel, it noted that should he be convicted, the right is reserved to implement the statutory provisions embodied at § 40-4-217(6), MCA.

¶5 Finally, the court again admonished the parties that their immaturity is victimizing the children. It found that Rhonda had violated the spirit and intent of the decree by frustrating and denying Daniel reasonable visitation privileges, and stated that her family and friends should refrain from interfering with such rights. He also admonished Daniel to move from his parents' house, find employment, and prepare to exercise his parental obligations without input from his family. It is from this order that Rhonda appeals.

¶6 First, Rhonda argues that on review, this Court should apply the "best interests of the child" standard, rather than the "serious endangerment of the child" standard. She acknowledges that at the time the District Court entered its decisions in April and July 1997, it was required to employ the "serious endangerment of the child" standard according to § 40-4-219(1)(c), MCA (1995). Pursuant to that subsection, the court could only terminate a joint custody provision where it found that a change in circumstances seriously endangered the child's physical, mental, moral and emotional health and that the harm caused by the change outweighed the advantages to the child. Section 40-4-219(1)(c), MCA (1995). However, the statute was amended effective October 1, 1997, and among the various changes, the legislature deleted the version of subsection (c) that appeared in the 1995 version of the statute. Section 40-4-219, MCA (1997). Rhonda cites this Court's decision in Brockie v. Omo Construction, Inc. (1994), 268 Mont. 519, 887 P.2d 167, *overruled by* Porter v. Galarneau (1996), 275 Mont. 174, 185, 911 P.2d 1143, 1150, and contends that on appeal, this Court must apply the law as it exists at the time this Court makes its decision. Because the "serious endangerment of the child" standard contained in the 1995 version of the statute is no longer the law, she reasons that a "parenting plan" (formerly known as a decree regarding custody) can now be modified if an amendment is necessary to serve the best interest of the child. Section 40-4-219(1), MCA (1997). In contrast, Daniel cites Day v. Child Support Enforcement Div. (1995), 272 Mont. 170, 900 P.2d 296, and contends that there is an exception to the general rule that the Court must apply existing law when the new law impairs a vested right. He argues that he has a vested right to the joint custody determination, because the parties did not appeal the court's original decree.

**¶7 In Porter v. Galarneau (1996), 275 Mont. 174, 911 P.2d 1143, this Court clarified when we would give retroactive effect to changes in state statutes or judicial decisions. With regard to state statutes, we cited the canon of statutory construction found at § 1-2-109, MCA, and stated that a "statute will not be given 'retroactive effect' unless the legislature expressly declares the statute to be retroactive." Porter, 275 Mont. at 185, 911 P.2d at 1150. In this case, not only did the legislature not expressly declare the statute to be retroactive, but it *expressly declared that the statute did not apply to modification proceedings that began before October 1, 1997.* Specifically, the Act provides:**

> **Section 41. Savings clause**. [This act] does not affect rights and duties that matured, penalties that were incurred, or proceedings that were begun before October 1, 1997.

. . .

> **Section 43. Applicability**. [This act] applies to proceedings begun after October 1, 1997, including proceedings regarding modification of orders or decrees existing on October 1, 1997.

1997 Mont. Laws, Ch. 343 (emphasis added). Because the legislature did not declare the amendments to § 40-4-219, MCA (1997), to be retroactive, and because the modification proceedings began before October 1, 1997, we apply the law that existed at the time the District Court rendered its decision.

**¶8 In any event, both versions of the statute require the District Court to first find the existence of changed circumstances from the time of the original decree before it may modify an existing custody arrangement. Section 40-4-219, MCA (1995) and (1997). The finding of changed circumstances is a jurisdictional prerequisite, and without such a finding, a district court may not modify an award. In re Marriage of Boyer (1995), 274 Mont. 282, 286, 908 P.2d 665, 667; In re Marriage of Syverson (1997), 281 Mont. 1, 16, 20, 931 P.2d 691, 701, 702.**

**¶9 In this case, the jurisdictional prerequisite has not been met. Nowhere in her brief does Rhonda identify any changed circumstances. Indeed, she does not even claim that changed circumstances exist. Instead, she points out facts that she claims demonstrate that joint custody is not in the children's best interest. A review of those**

facts indicates that they were circumstances known to Rhonda or were presented to the court at the time of the original dissolution hearing. For example, at the hearing to modify the decree, she presented evidence that (1) in 1995 while Daniel and she were still married, Daniel had a sexual encounter with a girl who was then fourteen years old; (2) Daniel used alcohol while still in high school; (3) on one occasion Daniel brought the children to a friend's house, but left when one of the individuals offered him beer; (4) her children allegedly do not have regular bed time hours when staying with Daniel; (5) one of the children visited the doctor for a respiratory problem, which she alleges was caused by Daniel's mother and sister smoking in their presence; (6) one of the children used a profane word after having visited Daniel; (7) during their marriage, Daniel drove his car fast when both she and the children were in the vehicle and he has three speeding tickets; and (8) on one incident he drove a vehicle after drinking while she and the children were in the vehicle. However, even if true, all these incidents occurred prior to the original hearing on April 14, 1997, and were thus known to Rhonda at the time of the original decree. Many were remote in time, occurring during the parties' brief marriage in high school, and other allegations, such as the allegation that Daniel took his children to a "party" were based upon hearsay evidence. Finally, evidence pertaining to some of the incidents, such as Daniel's sexual encounter with the young girl, his drinking, his driving after having been drinking, and his taking his children to a "party" were presented to the District Court at the original hearing. None of her evidence presented at the subsequent hearing to modify the decree constitutes a "change [that] has occurred in the circumstances of the child . . . ." Section 40-4-219, MCA.

¶10 The only potentially new circumstance that arose after the original decree occurred when Daniel was charged with a crime in May, 1997. However, at the time of the District Court's order, the charges were only pending. Unless he is convicted, he is presumed innocent. If he is ever convicted, the law provides a procedure by which Rhonda can once again seek a modification of the custody decree, as the District Court correctly noted. Section 40-4-219(8), MCA. This Court concludes that at this time, however, there are no changed circumstances which justify a modification of the custody decree.

¶11 Second, Rhonda argues that the District Court erred by denying her motion to modify the joint custody provisions contained in the decree of dissolution. Specifically, she argues that the court failed to make specific findings of fact to support the joint custody determination, and she contends joint custody is not in the

children's best interest. However, as we have already concluded, the jurisdictional prerequisite for modification of the custody determination has not been met. We therefore will look no further. Additionally, it appears that through the guise of the modification motion, Rhonda is actually attempting to challenge the original decree. If she opposed the joint custody determination at the time of the original decree, she should have filed an appeal at that time. Filing a modification motion is not the proper procedure to challenge the decree itself.

¶12 Finally, Rhonda argues that the District Court abused its discretion and violated her due process rights when it made certain comments at the hearings and in its memoranda accompanying the April 16, 1997 decree and the July 28, 1997 order denying her motion to modify the decree. In particular, she takes issue with (1) the court's statement that if she continued to violate the spirit and intent of the decree by depriving Daniel of his visitation rights, it would be justified in granting custody of the children to Daniel or the Department of Public Health and Human Services, Family Services Division; (2) the statement that the "philandering conduct of Daniel, notwithstanding, there was no persuasive evidence that he was less than a caring, loving father who still professes love for Rhonda;" and (3) the statement that the subsequent motion to modify the decree appeared to be a spiteful afterthought instigated by Rhonda's extended family. Rhonda argues that these statements indicate that the court was biased against her, and constituted a violation of Canon IV, Canons of Judicial Ethics. We disagree.

¶13 A review of the transcripts and the orders does not reveal any bias against Rhonda. The court supported its conclusions and decision with evidence, and its statements were not inappropriate. Moreover, the law specifically provides that when determining whether to modify the custodial arrangement, the court may consider whether one parent has refused to allow a child to have contact with another or has attempted to frustrate contact. Section 40-4-219(1)(d), MCA (1995). Thus, the court's comments about changing the custodial arrangement should Rhonda deprive Daniel of visitation rights was justified. Finally, we note that Rhonda took no legal steps to remove the District Court judge from the case for alleged bias at any stage of the proceedings. We thus reject any claim of bias.

¶14 In sum, we conclude that the District Court's findings regarding modification are not clearly erroneous and that it did not abuse its discretion when it refused to modify the custody arrangement between Rhonda and Daniel.

**¶15 Affirmed.**

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER