No. 92-450

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

SAINT VINCENT HOSPITAL
AND HEALTH CENTER, INC.,

      Plaintiff and Appellant,

v.

BLUE CROSS AND BLUE SHIELD
OF MONTANA,

      Defendant and Respondent.

FILED

OCT 1 2 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Gregory G. Murphy; Moulton, Bellingham,
Longo & Mather, Billings, Montana

      For Respondent:

          John Alke (argued) and Mike McCarter; Hughes,
Kellner, Sullivan & Alke, Helena, Montana


Submitted:  April 28, 1993

Decided:  October 12, 1993

Filed:

_____
Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Plaintiff Saint Vincent Hospital and Health Center, Inc., of Billings appeals an order of the First Judicial District Court, Lewis and Clark County, denying its request to compel a health care provider contract with Defendant Blue Cross and Blue Shield of Montana, Inc. (BC/BS). The District Court granted summary judgment for BC/BS.

We affirm.

Appellant raises two issues.

1. Did the District Court err in finding that application of the amended statute required a retroactive application of law?

2. Did the Legislature intend the amendment to apply to established agreements generally, and to Saint Vincent's desired agreement with BC/BS in particular?

BC/BS raises three issues.

1. Did the District Court correctly determine that the amendment did not apply in this case?

2. Is the amendment preempted by the Employee Retirement Income Security Act of 1984, P.L. 93-406, 29 U.S.C. § 1001, et seq. (ERISA), because it relates to ERISA plans and is not saved from preemption as the "regulation of insurance?"

3. In the alternative, does application of the amendment unconstitutionally impair BC/BS's obligation of contract?

We determine the sole issue to be whether the District Court was correct when it decided that the amendment could not be retroactively applied in this case.

In 1987, the Montana Legislature enacted the Preferred Provider Agreements Act, ch. 638, 1987 Mont. Laws 1756 (codified at §§ 33-22-1701 through -1707, MCA). The Act authorizes preferred provider agreements (PPAs) between health care insurers and health care providers. The Act defines a "preferred provider" as an individual or entity licensed or legally authorized to provide health care services or services covered within Title 33, chapter 22, part 7, who have contracted to provide specified health care services. Section 33-22-1703(6) and (8), MCA. The purpose of the Act is to permit health care insurers providing disability insurance benefits to its insureds or subscribers to contract with health care providers for reduced or negotiated fees. Section 33-22-1702, MCA. The preferred providers may accept negotiated and discounted fees as payment for services to insured patients for which the insurer is required to pay under the health benefit plan. Section 33-22-1702(2), MCA.

According to the 1987 Act, in exchange for acceptance of discounted fees, a preferred provider could receive an exclusive arrangement that steered insureds to the preferred provider. The arrangement assured the preferred provider substantial patient volume. As originally adopted, the Act contained a freedom of choice provision which stated: "This part does not require that an

3

insurer negotiate or enter into agreements with any specific provider or class of providers." Section 33-22-1704(3), MCA (1987).

Based on affidavits in the record, on May 1, 1990, BC/BS entered into an exclusive "HealthLink" agreement with Deaconess Medical Center of Billings, Inc. The agreement established a preferred provider organization (PPO) known as "Montana HealthLink" in Yellowstone County. The agreement was to extend for a period of three years, beginning July 1, 1990. Montana HealthLink is one of many PPOs established throughout the United States by health care insurers. PPOs are cost containment devices which have been adopted by employers throughout the country. The HealthLink agreement contained confidentiality provisions concerning business records and pricing. The agreement also contained a provision granting Deaconess the option to terminate the contract if BC/BS entered into a PPA with another hospital in Yellowstone County. Saint Vincent is in Yellowstone County.

On April 29, 1991, while the agreement between BC/BS and Deaconess was in force, the Montana Legislature amended the Act creating the Willing Provider Amendment. *See* ch. 714, 1991 Mont. Laws 2567 (amending § 33-22-1704, MCA). The Legislature deleted the freedom of choice provision in § 33-22-1704(3), MCA (1987), and added the following provision:

> (2) A health care insurer shall establish terms and conditions to be met by providers wishing to enter into

4

an agreement with the health care insurer under subsection (1)(a). These terms and conditions may not discriminate against or among providers. For the purposes of this subsection, price differences among hospitals or other institutional providers produced by a process of individual negotiation or by price differences among different geographical areas or different specialties do not constitute discrimination. <u>A health care insurer may not deny a provider the right to enter into an agreement under subsection (1)(a) if the provider is willing to meet the terms and conditions established in that agreement.</u> [Emphasis added.]

Section 33-22-1704(2), MCA (1991).

The parties do not dispute the facts.

On May 6, 1991, Saint Vincent requested from BC/BS that it participate in HealthLink. BC/BS declined the request. Saint Vincent filed an action in the District Court against BC/BS and requested production of the HealthLink contract. BC/BS responded with a motion for a protective order and for summary judgment. Saint Vincent initially resisted answering the motion for summary judgment, stating that it could not proceed without seeing the HealthLink contract. On April 24, 1992, the District Court determined that the lawsuit was predicated on whether the Willing Provider Amendment applied to HealthLink.

On September 9, 1992, the District Court granted BC/BS's motion for summary judgment, finding that the Willing Provider Amendment did not compel BC/BS to offer HealthLink to Saint Vincent. The District Court reasoned that the Willing Provider Amendment could not be applied retroactively because doing so would entail a substantive change in law, rather than merely a procedural

5

change. Further, the District Court reasoned that the Legislature did not specifically declare the amendment to take effect retroactively. The court concluded that the 1991 amendment created a new obligation and imposed a new duty on BC/BS that did not exist when it entered into the agreement with Deaconess.

The only issue we address is whether the District Court erred in finding that application of the Willing Provider Amendment of 1991 to Saint Vincent's proposed and compelled contract with BC/BS would result in retroactive application of law?

This Court's standard of review when reviewing conclusions of law by a trial court "is whether the tribunal's interpretation of the law is correct." Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

Retroactive laws include both retrospective and ex post facto laws; the former technically applying only to civil laws. We have defined a retrospective law as one "which takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions already passed." City of Harlem v. State Highway Comm'n. (1967), 149 Mont. 281, 284, 425 P.2d 718, 720. A retrospective law gives a transaction a different legal effect from that which it had under the law when it occurred.

The United States and Montana Constitutions dictate that if a retrospective law impairs a vested right acquired under an existing law, or creates a new obligation or attaches a new disability with

6

respect to past transactions, the law is objectionable. Article I, Section 10, of the United States Constitution provides: "No State shall . . . pass any . . . ex post facto Law . . . ." Similarly, Article II, Section 31, of the Montana Constitution provides: "No ex post facto law . . . shall be passed by the legislature."

We have said that "retrospective laws are looked upon with disfavor." Sullivan v. City of Butte (1922), 65 Mont. 495, 498, 211 P. 301, 303. Montana's "retroactive law" statute provides: "No law contained in any of the statutes of Montana is retroactive unless expressly so declared." Section 1-2-109, MCA. Previously, this Court has construed Montana's retroactive law statute. In Dunham v. Southside National Bank (1976), 169 Mont. 466, 471, 548 P.2d 1383, 1385, we held that "[t]here is a presumption in Montana against construing a statute retroactively, unless specifically declared retroactive." Further, this Court has determined that "[t]he legislative intent must be gathered from the act itself and no other source." Neel v. First Federal Savings & Loan Ass'n. (1984), 207 Mont. 376, 386, 675 P.2d 96, 102.

Although the general rule of law is that a statute is not to be applied retroactively, an exception to that rule is change in a law that is merely procedural rather than substantive. State v. District Court of Fourth Judicial District (1966), 149 Mont. 22, 417 P.2d 109. Here, however, the amendment of § 33-22-1704, MCA, affected the substantive rights of the parties. Therefore, the exception does not apply.

7

We reject Saint Vincent's assertion that this Court has effectively reversed the presumption against retroactive laws in State Compensation Insurance Fund v. Sky Country, Inc. (1989), 239 Mont. 376, 780 P.2d 1135. There we looked beyond the statute itself to legislative committee minutes to determine legislative intent. The statute established a simplified procedure for settling disputes over the status of workers as employees or independent contractors for both unemployment compensation and workers' compensation purposes. In that case, the law affected only procedural matters not relating to substantive rights of the parties. For that reason, Saint Vincent's application of Sky Country to this case is misplaced.

If applied to BC/BS in this case, the Willing Provider Amendment would impair BC/BS's vested rights, create new obligations for BC/BS, and attach a new disability with respect to its transactions with Deaconess. Effectively, the Amendment would nullify the exclusivity and confidentiality provisions of the BC/BS/Deaconess HealthLink contract. Such an alteration of the contract would divest BC/BS of its right to an exclusive contract with Deaconess and permit unanticipated access to the contract's bidding figures and other confidential terms and conditions by competitors, such as Saint Vincent. Further, the Amendment would obligate BC/BS to offer a previously exclusive HealthLink contract to Saint Vincent, a party with which it did not intend to contract and was not required to do so under existing law. In turn, BC/BS

8

would incur a new disability as Deaconess would be free to exercise its option to terminate the contract.

In sum, the Willing Provider Amendment would affect BC/BS's substantive rights. Thus, it is a substantive change in law, and cannot be applied to HealthLink unless the Legislature expressly had declared it to be retroactive in the Act itself; which it did not. Chapter 714 of the 1991 Montana Session Laws contains no express intent that the statute be applied retroactively. Instead, the amendment is declared to be effective on passage and approval, and was approved on April 29, 1991. Therefore, the Willing Provider Amendment cannot be applied to a contract entered into before that date.

Application of the Willing Provider Amendment would give effect to a retrospective law; a result which the Laws of Montana and this Court rejects. We hold that the District Court did not err in finding that application of the Willing Provider Amendment of 1991 to BC/BS, by compelling a BC/BS/Saint Vincent agreement, would result in retroactive application of law.

We affirm.

William E. Hunt Sr.
Justice

9

We concur:

_____
        Chief Justice

_____

_____

_____

_____
        Justices

10

District Court Judge John Warner specially concurring.

I concur in the opinion of Justice Hunt that Chapter 714, 1991 Mont. Laws 2567, must not be applied to the May 1, 1990, preferred provider agreement between respondent Blue Cross and Deaconess Medical Center of Billings. The amendment is substantive, enacting a "willing provider" provision which profoundly affected preferred provider agreements in Montana. As the Legislature did not express its intention to make the amendment's application retrospective, it must not be so construed by this Court. Section 1-2-109, MCA.

In my opinion, the argument of St. Vincent Hospital that this Court must reverse because the District Court denied discovery of a copy of the agreement at issue must also be addressed.

In the District Court, St. Vincent moved to produce the preferred provider agreement, any correspondence relating thereto, in-house notes concerning the agreement, lists of all participants in the program, and complete financial information concerning the agreement. Blue Cross objected on the grounds the contract was not relevant, much of the requested information was proprietary, and moved for a protective order. Blue Cross also moved for summary judgment. St. Vincent moved to compel production of the demanded information.

The District Court denied the requested discovery, including the preferred provider agreement, until after it ruled on the motion for summary judgment. As Blue Cross was granted summary judgment, none of the information demanded was produced.

11

St. Vincent complained bitterly in the District Court, in its briefs to this Court, on oral argument here, and even in a "Motion to Clarify Record" submitted after oral argument, that it was never allowed to examine a copy of the preferred provider agreement at issue, and thus was placed at an unfair disadvantage in arguing that the 1991 statutory amendment applied to such agreement.

The rules concerning discovery are broad and liberal.

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Rule 26(b)(1), M.R.Civ.P.

That the preferred provider agreement is relevant to this lawsuit cannot be gainsaid. The contract is the basis of the lawsuit. Whether it exists, falls within the type of agreement allowed by the statutes, or contains provisions which contemplate the demand by St. Vincent to match its terms, are all relevant considerations. Further, the provisions of the agreement could suggest other avenues of attack on its validity, such as the anti-trust laws. As the complaint prays for whatever relief may be appropriate, the discovery demand for the agreement's production is reasonably calculated to lead to the discovery of admissible evidence.

The District Court has the ability to protect proprietary information that may be in the agreement.

12

> Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or a person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (7) that a trade secret or other confidential research development, or commercial information not be disclosed or be disclosed only in a designated way . . . .

Rule 26(c), M.R.Civ.P.

All information concerning the existence of the agreement, its date, parties, term, provisions, and effect come from the affidavits of employees of Blue Cross, which affidavits cannot be cross-examined or disputed. What information Blue Cross chooses to reveal comes into the record piecemeal, at the convenience of, and in words chosen by, Blue Cross. On the surface, it appears impossible for St. Vincent to dispute what is revealed, or to compare and cross-reference such information with other parts of the agreement, as the contract which is the very basis of the lawsuit is not produced.

However, the record before this Court confirms the statement of counsel for Blue Cross on oral argument that, in fact, St. Vincent had available to it, without the necessity of court order, a copy of the preferred provider agreement. Attachments to the affidavit of a Blue Cross vice president, submitted to the District Court, indicate that Blue Cross did seek and obtain the permission of the other contracting party, Deaconess Medical Center, to release to St. Vincent a complete copy of the preferred provider agreement so it could determine what rights it might have under the

13

amended law. Blue Cross then informed St. Vincent that access to an excerpted copy of the agreement was available.

Blue Cross did demand to withhold some pricing and other information which could cause a competitive detriment.

The record is devoid of any indication that St. Vincent took advantage of its opportunity to examine the agreement. It rather continued in its demand that information with an allegedly commercial value be provided along with the contract in question. This leads to the conclusion that it was really commercially valuable information which was sought.

Thus, while the District Court should have partially granted the motion to compel, allowing St. Vincent to have a copy of the preferred provider agreement, there was no substantial harm caused by not doing so.

A further cause of serious concern not addressed in the majority opinion is the information revealed by Blue Cross for the first time in oral argument that the preferred provider agreement is self-perpetuating. Apparently, if neither party gives notice to terminate, the agreement is automatically renewed year after year. However, the 1993 Legislature amended the applicable statute to provide that any preferred provider agreement which is renewed after March 26, 1993, must give all health care providers the opportunity to participate on the basis of a competitive bid. Section 33-22-1704(3), MCA.

Blue Cross conceded at oral argument that the agreement which is the subject of this case is subject to the 1993 amendment.

14

Also, St. Vincent can demand the opportunity to bid, and litigate the issue if it is denied that opportunity. Therefore, remand for consideration of the new information is not required.

For these reasons, in addition to those stated by Justice Hunt, I would affirm the District Court.

District Court Judge John Warner,
sitting for Justice R. C. McDonough,
retired


Justice Fred J. Weber concurs in the foregoing special concurrence.

Justice


Chief Justice J. A. Turnage:

I concur in the specially concurring opinion of Judge Warner.

Chief Justice

15

October 12, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Gregory G. Murphy
Moulton, Bellingham, Longo & Mather
P.O. Box 2559
Billings, MT 59103-2559

John Alke and Mike McCarter
Hughes, Kellner, Sullivan & Alke
P.O. Box 1166
Helena, MT 59624

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy