NO. 94-087

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

LEN WALLACE and PAMELA WALLACE,
d/b/a BIG VELVET RANCH,

     Applicants and Appellants,

  -vs-

THE MONTANA DEPARTMENT OF FISH,
WILDLIFE AND PARKS and
PATRICK J. GRAHAM, DIRECTOR,

     Respondents and Respondents.

FILED

JAN 24 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Twenty-First Judicial Dist.,
            In and for the County of Ravalli,
            The Honorable Jeffrey Langton, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

        Ward Swanser; Moulton, Bellingham, Longo & Mather,
        Billings, Montana

     For Respondents:

        Robert N. Lane and Beate Galda, Montana Department
        of Fish, Wildlife and Parks, Helena, Montana

Submitted on Briefs': October 28, 1994

Decided: January 24, 1995

Filed:

_____
        Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Len and Pamela Wallace (Wallaces), doing business as the Big Velvet Ranch, appeal from the findings, conclusions, and judgment of the Twenty-First Judicial District Court, Ravalli County, denying their application for a writ of mandamus directing the Montana Department of Fish, Wildlife, and Parks (Department) to issue a license for expansion of their game farm. We affirm.

Early in 1992, the Wallaces obtained a license from the Department for the operation of a 160-acre game farm located in Ravalli County, Montana. Over the next year, the Wallaces applied for, and received, expansion licenses for approximately 1,904 additional acres.

In early 1993, the Wallaces became aware that House Bill 338, containing extensive revisions of the game farm licensing statutes, had been introduced in the Montana legislature. They submitted an expansion application to add 2,600 acres to their game farm on March 15, 1993; the Department received the application on March 22, 1993. Before the Department was required to act on the application, House Bill 338 was approved and became effective on April 12, 1993. Section 18, Chap. 315, 1993 Mont. Laws 982. The Department notified the Wallaces that their application would be subject to the amended game farm licensing procedure.

The Wallaces demanded that the Department review the application and issue the license under the law in effect on the date the application was submitted. The Department denied the

2

Wallaces' request and refused to issue the license under § 87-4-409, MCA (1991); it imposed the requirements of § 87-4-409, MCA (1993), on the Wallaces' application.

The Wallaces then applied to the District Court for a writ of mandamus directing the Department to issue the game farm license pursuant to the 1991 version of the statute. The District Court issued the writ, directing the Department to issue the license or, in the alternative, to appear and show cause why it had not done so. Following a hearing, the District Court issued findings of fact, conclusions of law, and a judgment quashing the writ and denying the Wallaces' application for a writ of mandamus. The Wallaces appeal. Additional facts are included in our discussion of the issues.

As amended by the 1993 legislature, the game farm licensing statutes imposed different obligations on both license applicants and the Department. Section 87-4-409(3), MCA (1993), provides the Department 120 days, rather than sixty days, to notify an applicant of its proposed decision on an application. Section 3, Chap. 315, 1993 Mont. Laws 974. In addition, the Department is now authorized to determine that an environmental impact statement is required with regard to an application; in that event, the Department has an additional 180 days within which to act on the application. Section 3, Chap. 315, 1993 Mont. Laws 974. The legislature also amended § 87-4-411, MCA, to increase the initial license fee from $100 to $200. Section 5, Chap. 315, 1993 Mont. Laws 976.

It is undisputed that § 87-4-409, MCA (1993), was not

expressly declared to be retroactive and, as a result, that the District Court correctly concluded that it was not, by its terms, a retroactive law. See § 1-2-109, MCA. The dispositive issue before us is whether the District Court erred in concluding that subjecting the Wallaces' expansion license application to § 87-4-409, MCA (1993), did not constitute an impermissible retroactive application of that statute. We review a district court's conclusions of law to determine whether they are correct. Saint Vincent Hosp. v. Blue Cross (1993), 261 Mont. 56, 60, 862 P.2d 6, 8.

A retroactive law is defined as one "which takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions already passed." Saint Vincent Hosp., 862 P.2d at 9; citing City of Harlem v. State Highway Comm'n (1967), 149 Mont. 281, 284, 425 P.2d 718, 720. Any such imposition on a vested right or past transaction is sufficient to constitute an impermissible retroactive application of a statute. See Thayer v. Hicks (1990), 243 Mont. 138, 157, 793 P.2d 784, 796.

A.    Did the Wallaces have a vested right to receive a game farm license by virtue of submitting an application prior to the effective date of the 1993 amendments to § 87-4-409, MCA?

The evidence presented to the District Court characterized the pre-amendment game farm application process as a "formality" and established that the Wallaces were qualified applicants under § 87-4-409, MCA (1991); licensure pursuant to that statute had

4

previously been **a virtual certainty.** Based on that evidence, the Wallaces argue that they acquired a vested right to approval of their license application on submission of that application and that the Department's review under the provisions of § 87-4-409, MCA (1993), constituted an impermissible retroactive application of that statute.

"A license is a grant by a government authority or agency of the right to engage in conduct that would be improper without such a grant. The conferment of a license . . . is merely a privilege . . . ." 4 Stein, Mitchell, Mezines, Administrative law, § 41.01 (1994); West-Mont Community Care v. Board of Health (1985), 217 Mont. 178, 182, 703 P.2d 850, 852. The Wallaces clearly are not entitled to operate a game farm on their property without first obtaining a license from the Department, and obtaining a license requires compliance with applicable statutory criteria. Section 87-4-407(1), MCA; see State ex rel. Dep't of Health and Env. Sci. v. Green (1987), 227 Mont. 299, 303-04, 739 P.2d 469, 472-73. **Similarly,** in making a decision on a license application, the Department is required to act in accordance with the statutes circumscribing its powers. See Peterson v. Livestock Comm'n (1947), 120 Mont. 140, 147, 181 P.2d 152, 156. As a general rule, the Department's decision on a license application must be based on the law in effect at the time of that decision despite the fact that the law may have changed. Ziffrin, Inc. v. United States (1943), 318 U.S. 73, 78, 63 S.Ct. 465, 469, 87 L.Ed. 621, 625-26; see also, Wilson v. State Highway Comm'n (1962), 140 Mont. 253,

257, 370 P.2d 486, 488.

The Wallaces' mere submission of an application for expansion of their game farm did not vest in them a right to issuance of the license as of the date the application was submitted. Section 87-4-409, MCA (1991), is captioned "Application for license-limitations on issuance;" subsection (3) of the statute authorizes the Department to review, and either grant or deny, an application within sixty days. Thus, the license was a privilege to which the Wallaces were not entitled until such time as the Department acted on the application. The statutory review process and time period had not been completed prior to the effective date of the amended statute.

Nor does the parties' agreement that license approval under § 87-4-409, MCA (1991), was "virtually automatic" alter the fact that receipt of a game farm license was not certain until the Department acted pursuant to the statute. In addition, we note that an environmental assessment prepared during the Department's review of one of the Wallaces' prior expansion applications indicated that further expansion could detrimentally impact winter game animal habitat and a migration corridor. Based on that history and the Department's clear authority under § 87-4-409, MCA (1991), to deny an application, issuance of a license cannot be said to have been a certainty. We conclude, therefore, that the Wallaces' mere submission of a completed application did not result in a vested right to issuance of a license under § 87-4-409, MCA (1991).

6

The Wallaces cite no authority for their assertions that they had a vested right to receive a license under the terms of § 87-4-409, MCA (1991), or that Department review of their application pursuant to § 87-4-409, MCA (1993), otherwise impaired their vested rights and, indeed, our decision here is in accord with prior decisions addressing retroactive application of statutes. In Saint Vincent Hosp., Blue Cross/Blue Shield and Deaconess Medical Center entered into an exclusive contract under the Preferred Provider Act (Act). Saint Vincent Hospital subsequently sought to become a party to that contract pursuant to an amendment to the Act. We determined that applying the amended Act to the existing contract would be an impermissible retroactive application of that law because it would divest contractually negotiated rights to an exclusive contract, as well as provide access to contractually confidential information. Saint Vincent Hosp., 862 P.2d at 9. Similarly, we determined in City of Harlem that application of a new statute requiring the Highway Commission to gain a municipality's consent before constructing a highway by-pass of that municipality impaired the Highway Commission's vested rights under various contracts. City of Harlem, 425 P.2d at 720.

Unlike the vested contractual rights at stake in Saint Vincent Hosp. and City of Harlem, the present case involves the mere submission of an application for a game farm license. The Wallaces' only vested rights are in the game farm license and expansion licenses received prior to the effective date of § 87-4-409, MCA (1993). Those rights are not impacted in any way by the

7

1993 amendments or the license application at issue here.

> B. Did the statutory amendments authorizing the Department to require an environmental impact statement, increasing the initial license fee, and expanding the **time** frame for review create a new obligation, impose **a** new duty, or attach a new disability with respect to past transactions between the Department and the Wallaces?

Approximately 100 days after receiving the Wallaces' application, the Department informed the Wallaces pursuant to § 87-4-409(3), MCA, that an environmental impact statement was required and requested a $25,000 deposit to initiate the study. Because of the need for the environmental impact statement, the Department also informed the Wallaces that § 87-4-409(3), MCA (1993), provided it with an additional 180 days to complete the evaluation of the application. The Wallaces argue that the deposit to fund an environmental impact statement, the expanded time period for departmental review, and the license fee increase created new obligations, duties, and disabilities which should not be applied retroactively.

As set forth above, creation of a new obligation, imposition of a new duty, or attachment of a new disability in respect to transactions already passed renders a law impermissibly retroactive. Saint Vincent Hosp., 862 P.2d at 9. A transaction is defined as "an act or agreement, or several acts or agreements having some connection with each other, in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered." Black's Law Dictionary 1496 (6th ed. 1990).

8

The transaction involved in <u>Saint Vincent Hosp.</u> was a contract which had been in effect for approximately one year before the amendment of the Act. With respect to that contract, we determined that application of the amended statute would obligate Blue Cross to offer an exclusive agreement to a party with whom it did not intend to contract and impose a disability on Blue Cross because the contract permitted Deaconess to terminate the agreement if Blue cross entered into a similar agreement with another medical provider. <u>Saint Vincent Hosp.,</u> 862 P.2d at 9. Thus, applying the amended Act to the existing contract would attach both a new obligation and a new disability to a past transaction and constitute an impermissible retroactive application of the statute.

Here, the Wallaces are not a party to any transaction which would be altered as a result of the Department subjecting their expansion license application to § 87-4-409, MCA (1993). While applying § 87-4-409, MCA (1993), to an existing game farm license possessed by the Wallaces arguably would constitute an impermissible imposition of new obligations and disabilities to a transaction already passed, no such effort occurred here. The mere submission of a license application, although an act by the Wallaces, cannot be said to alter the legal relationship between them and the Department. We conclude, therefore, that subjecting the Wallaces' pending license application to § 87-4-409, MCA (1993), did not impose a new duty, obligation, or disability with respect to a transaction already passed.

We conclude that the Department properly subjected the

9

Wallaces' game farm application to the provisions of § 87-4-409, MCA (1993). We hold, therefore, that the District Court properly concluded that application of § 87-4-409, MCA (1993), did not impair the Wallaces' vested rights or create a new obligation, duty, or disability with respect to a past transaction and, thus, did not constitute an impermissible retroactive application of that statute.

The Wallaces argue separately that the Department violated its own internal policies by not issuing them a license within sixty days of submission of a completed application. This argument is without merit. The Department policy simply mirrored the sixty-day review requirement contained in § 87-4-409(3), MCA (1991), explicitly stating that "[t]he department is required by statute to either issue or deny a game farm license within 60 days of receiving a completed application." Moreover, a memorandum relied on by the Wallaces specified that the procedures outlined therein governed the review process until "final action on pending game farm legislation." Once the amended statute became effective and applicable, administrative policies which implemented prior statutory requirements must necessarily give way to the new controlling law. We conclude that the Department did not violate its internal policy by subjecting the Wallaces' application to the provisions of § 87-4-409(3), MCA (1993).

The Wallaces also make a passing assertion that the District Court failed to properly consider and make findings of fact regarding certain evidence. A district court's findings of fact

10

must be supported by substantial evidence, which is the amount of relevant evidence a reasonable mind might accept as adequate to support a conclusion. Accounts Management Corp. v. Lyman Ranch (1987), 230 Mont. 35, 40-41, 748 P.2d 919, 923. We decline to address this argument since it is clear that, for the most part, the facts and evidence asserted by the Wallaces in this regard are irrelevant in that they relate to findings which may have been appropriate had we concluded that the pre-amendment version of § 87-4-409, MCA, was applicable here.

Given our resolution of the issues above, it is clear that the District Court did not err in denying the Wallaces' application for a writ of mandamus. A writ of mandamus is appropriate where a party seeks performance of a clear legal duty by the party against whom the writ is issued. State ex rel. Neuhausen v. Nachtsheim (1992), 253 Mont. 296, 299, 833 P.2d 201, 203. We review a district court's grant or denial of a writ of mandamus for abuse of discretion. Neuhausen, 833 P.2d at 203.

Here, the Department properly subjected the Wallaces' expansion license application to the provisions of § 87-4-409, MCA (1993), and, as a result, mandamus is not available. We hold, therefore, that the District Court did not abuse its discretion in denying the Wallaces' application for a writ of mandamus.

Affirmed.

_____
Justice

11

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12

January 24, 1995

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Ward Swanser
MOULTON, BELLINGHAM, LONG0 **& MATHER,** P.C.
P. 0. Box 2559
Billings, MT 59103-2559

Robert N. Lane and **Beate** Galda
Department of Fish, Wildlife and Parks
P. 0. Box 200701
Helena, MT 59620-0701

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy