No. 97-715

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 294

TOWN PUMP, INC., a Montana corporation, and

TOWN PUMP OF HARDIN, INC., a Montana corporation,

Petitioners and Appellants,

v.

BOARD OF ADJUSTMENT OF THE CITY

OF RED LODGE, MONTANA,

Respondent and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Carbon,

The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD

For Appellants:

L. B. Cozzens; Crowley, Haughey, Hanson, Toole & Dietrich,

Billings, Montana

For Respondent:

Gary R. Thomas; Thomas Law Office, Red Lodge, Montana

Submitted on Briefs: October 1, 1998

Decided: December 3, 1998

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1. Appellants Town Pump and Town Pump of Hardin (Town Pump) appeal from the judgment of the 13th Judicial District Court, Carbon County, holding that Town Pump's appeal from the decision of the Board of Adjustment was moot because the City of Red Lodge's Development Code had a permissible retroactive effect.**

**¶2. We affirm.**

**¶3. In determining whether the District Court erred, we consider the following issues:**

**¶4. 1. Whether the retroactive application of the Development Code resulted in a denial of Town Pump's constitutional right to due process.**

**¶5. 2. Whether the State of Montana has preempted Red Lodge's regulation of the sale of alcohol.**

Standard of Review

**¶6. In reviewing a district court's conclusions of law, we determine whether the district court's interpretation of law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603. In reviewing a district court's**

findings of fact, we determine whether there is clear error. *Steer, Inc.*, 245 Mont. at 474, 803 P.2d at 603.

Factual and Procedural Background

¶7. Town Pump entered into two agreements to purchase real property (the property). The second of the agreements was dated September 13, 1994. Under the agreements, the owner of the property, Trillium Corporation, was required to obtain subdivision approval from the City of Red Lodge (Red Lodge) in order to convey the property to Town Pump. Town Pump intended to build and operate a gas station, convenience store, and casino, and to sell beer and wine for consumption in the casino. While Town Pump awaited approval for the subdivision of Trillium's property, the property was rezoned as "commercial highway."

¶8. With the property rezoned as commercial highway, Town Pump could operate a gas station and convenience store but had to obtain a "special exception" from Red Lodge's Board of Adjustment (the Board) in order to sell beer and wine for on-premises consumption. Acting as agents for Trillium, Town Pump filed an application for a special exception (the beer and wine application) with the zoning officer for the City of Red Lodge, Jerry Ballard (Ballard) on September 29, 1994. Ballard forwarded the beer and wine application to the Board. The Board met to consider the beer and wine application but apparently took no action.

¶9. In March, 1995 preliminary approval for the subdivision of the Trillium property was granted, and Ballard again forwarded Town Pump's application to the Board. On April 18, 1995 a public hearing was held on the beer and wine application. At the conclusion of the hearing, the Board unanimously denied the beer and wine application. Before the hearing, however, at least one member of the Board conducted an *ex parte* telephone survey of Red Lodge citizens and talked with acquaintances to learn their opinions about the beer and wine application. The Board member did not disclose the survey or its results to Town Pump and based his decision, at least in part, on the information he obtained. The Board's chairman asked the public for a show of hands by everyone opposed to the beer and wine application. Some Board members voted negatively because members of the public opposed the beer and wine application.

¶10. In May, 1995 Town Pump brought suit against the Board, appealing the Board's

denial of Town Pump's application. An evidentiary hearing was delayed repeatedly. A trial date of December 12, 1995 was vacated because the parties agreed that a continuance would facilitate resolution of some legal issues. On December 21, 1995 Red Lodge adopted a master plan. Trial was set for October, 1996 but was continued, first to December, 1996, and then to April, 1997. Finally, the trial was reset for May, 1997. Meanwhile, Red Lodge adopted an amended Development Code (the Development Code) as an interim ordinance in April, 1997 and adopted it as a permanent ordinance in May, 1997.

¶11. The Development Code addressed issues, such as drive-through facilities and key lock systems for dispensing petroleum products, that had been brought to the attention of Red Lodge after the Board began its review of Town Pump's proposed development. Moreover, the Development Code required conditional use permits instead of special exceptions for on-premises consumption of alcohol. The Development Code further stated:

Retroactive Application. This code is made expressly retroactive and shall apply to all applications for sign permits, building permits, zoning variances, zoning special exceptions, zoning changes, and all other applications for building and land use permits, land divisions, development activity, land use activity, and land use changes which have been received by the city and not granted as of the effective date of this code.

¶12. A trial without jury was held in May, 1997 and the District Court issued findings of fact and conclusions of law in November, 1997.

¶13. The District Court made the following conclusions of law. Red Lodge had authority to declare that the Development Code applied to all pending applications for special exceptions. Town Pump did not obtain a vested interest in the beer and wine application or in having the beer and wine application determined under the ordinances of Red Lodge as they existed when Town Pump filed its application. Red Lodge's application of the Development Code to the beer and wine application did not violate the due process requirements of the United States Constitution or those set forth in Article II, Section 17 of the Montana Constitution. The validity of the Development Code "was not before the Court." Finally, the District Court concluded that the Development Code rendered Town Pump's application and its appeal from the decision of the Board moot, and denied Town Pump's petition for writ of

certiorari.

Discussion

¶14. 1. Whether the retroactive application of the Development Code resulted in a denial of Town Pump's constitutional right to due process.

¶15. Town Pump contends that the District Court erred in holding that Red Lodge's adoption of the Development Code rendered moot the beer and wine application and Town Pump's appeal from the Board's denial of the beer and wine application. Town Pump argues that by arbitrarily and illegally denying the beer and wine application, the Board violated Town Pump's right to substantive due process in the administration of the zoning ordinance. Further, by enacting a retroactive Development Code, the Board denied Town Pump's right to appeal and exonerated itself for its wrongdoing.

¶16. Town Pump also argues that it had in effect a "passed" transaction, comprising a series of events including the beer and wine application, the Board's illegal and arbitrary conduct in denying it, and Town Pump's appeal of the Board's decision, and that the passed transaction was protected under Montana's Constitution, Article XIII, Section 1, Clause 3. Article XIII, Section 1, Clause 3 provides that "[t]he legislature shall pass no law retrospective in its operations which imposes on the people a new liability in respect to transactions or considerations already passed." Thus, Town Pump argues that the Development Code should not be retroactively applied because it impairs Town Pump's vested interest and burdens Town Pump's "passed" transaction.

¶17. In addition, Town Pump argues that because it met the criteria for a special exception under the old zoning procedures, the Board was required to grant the special exception. Town Pump argues that the Board acted in bad faith in delaying the trial in the District Court and that the Board attempted to delay Town Pump's project. Finally, Town Pump asserts that it is a victim of discriminatory zoning, that some amendments to the Development Code targeted Town Pump's project. Town Pump contends that the Board should be barred by principles of estoppel and equity from retroactively applying the Development Code.

¶18. The Board responds that the retroactive effect of the Development Code has not

resulted in a denial of due process for Town Pump because Town Pump had neither a vested interest in the beer and wine application nor a "passed" transaction. The Board also argues that retroactive application of the Development Code is not barred by principles of equity or estoppel because Town Pump failed to offer any evidence at trial that the Board attempted to delay the permit process or the trial.

¶19. We first consider whether the retroactive effect of the Development Code violates Town Pump's substantive right to due process. In Cosgriffe v. Cosgriffe, this Court addressed whether a childhood sexual abuse statute of limitations with retroactive effect violated the due process requirements of Montana's Constitution or of the Fourteenth Amendment of the United States Constitution. Cosgriffe v. Cosgriffe (1993), 262 Mont. 175, 864 P.2d 776. The statute of limitations in *Cosgriffe* revived previously barred claims of childhood sexual abuse by the respondent's daughter. The Court in *Cosgriffe* adopted a three-part test for determining whether a statute has exceeded the restraints imposed upon it by substantive due process:

[T]he restraints on legislation imposed by substantive due process as a source of constitutional protection for interests not specifically identified by explicit constitutional language could be summarized in a three-part formula: the legislation must: (a) seek to achieve a legitimate governmental purpose; (b) use means that are rationally related thereto; and (c) be neither arbitrary nor unreasonable in its effects.

*Cosgriffe*, 262 Mont. at 179, 864 P.2d at 778. The Cosgriffe Court concluded that the respondent did not have a vested interest in the previously applicable statute of limitations. Cosgriffe, 262 Mont. at 180, 864 P.2d at 779.

¶20. Thus, we apply *Cosgriffe*'s three-part test to determine whether the retroactive effect of the Development Code exceeds the restraints imposed by substantive due process. We conclude first that the Development Code had a legitimate purpose and, second, that its means were reasonably related to that purpose. *Cosgriffe*, 262 Mont. at 179, 864 P.2d at 778. The District Court interpreted *Cosgriffe*'s third prong, that legislation be "neither arbitrary nor unreasonable in its effects," to mean that a retroactive law is unreasonable and arbitrary in its effects when it affects or destroys "vested interests." *Cosgriffe*, 262 Mont. at 179, 864 P.2d at 778. However, in Wallace v. Montana Dept. of Fish, Wildlife & Parks (1995), 269 Mont. 364, 889 P.2d 817, this Court concluded:

A retroactive law is defined as one "which takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions already passed." . . . Any such imposition on a vested right or past transaction is sufficient to constitute an impermissible retroactive application of a statute.

*Wallace*, 269 Mont. at 367-68, 889 P.2d at 819-20 (citations omitted). Thus, under the third prong of Cosgriffe, we consider not only whether Town Pump had a vested right but whether there was a passed or "past" transaction that the Development Code burdened.

**¶21. This Court has not previously defined "vested interest." We have determined, however, when a party does not have a vested interest. *See, e.g.,* Femling v. Montana State University (1986), 220 Mont. 133, 713 P.2d 996; *Wallace*, 269 Mont. 364, 889 P.2d 817. Plaintiff Femling, a veteran, applied for employment with Montana State University (MSU) under a statute that gave absolute hiring preference to veterans. Femling brought suit after MSU rejected him for the position. One day after he filed suit, however, the veterans' preference statute was retroactively repealed. The Court in *Femling* determined that "for substantive due process protections to apply, Femling's claim to the absolute preference must be a vested right." *Femling*, 220 Mont. at 137, 713 P.2d at 998. The *Femling* Court concluded that "a veteran does not have a reliance interest in the veterans' preference *unless and until it is actually received.*" *Femling*, 220 Mont. at 137, 713 P.2d at 998 (emphasis added) (citation omitted).**

**¶22. In *Wallace,* the Wallaces obtained a license for a game farm from the Department of Fish, Wildlife and Parks (the Department). The Wallaces subsequently applied for and received expansion licenses for their game farm. Recognizing that a pending bill would revise the game farm licensing statutes, the Wallaces submitted a game farm expansion application. Before the Department was required to act upon the Wallaces' application, the bill was enacted. The Department denied their expansion application under the new game farm licensing statute, § 87-4-409(3), MCA (1993). This Court held in *Wallace* that "the Wallaces' mere submission of an application for expansion of their game farm did not vest in them a right to issuance of the license as of the date the application was submitted." *Wallace*, 269 Mont. at 368, 889 P.2d at 820.**

**¶23. In accord with our decisions in *Wallace* and *Femling*, we hold that Town Pump**

did not have a vested interest in the beer and wine application. Like the Wallaces, Town Pump did not gain a vested interest merely because it submitted the beer and wine application before the adoption of the Development Code. *Compare Femling*, 220 Mont. at 137, 713 P.2d at 998 (holding Femling had no "reliance interest in the veterans' preference unless and until it is actually received").

¶24. The District Court determined, and we agree, that the general rule appears to be that applications for building permits may be denied based on zoning regulations enacted after the applications are made. Town Pump argues, however, that if this Court follows the general rule, the rule should be limited to cases where a zoning ordinance was pending when an application was filed. A small number of states thus limit the general rule. *See* Ronald F. Chase, Annotation, *Retroactive Effect of Zoning Regulation, In Absence of Saving Clause, on Pending Application for Building Permit*, 50 A.L.R.3d 596 (1973). We decline to limit the general rule to instances when a zoning ordinance is pending.

¶25. We conclude that the general rule should apply in the present case, and we note the general rule accordingly:

In most jurisdictions it is clear that, as a general rule, the denial of an application for a building permit may be based on a zoning regulation enacted or becoming effective after the application was made, or to state the rule conversely, a zoning regulation may be retroactively applied to deny an application for a building permit, even though the permit could have been lawfully issued at the time of application.

Chase, 50 A.L.R.3d 596, 607. *See, e.g.,* Town of Stephens City v. Russell (Va. 1991), 399 S.E.2d 814 (holding developer did not have a vested right to construct apartments on his property when he failed to obtain permit before zoning was amended); Winiker Realty, Inc. v. Zoning Board of Appeals of Millis (Mass. 1972), 285 N.E.2d 452 (holding application for multi-unit dwellings controlled by subsequent amendment to zoning by-law); Najarian Realty Corp. v. Zoning Board of Review (R.I. 1965), 208 A.2d 528 (holding application for gas station controlled by later amendment to zoning ordinance).

¶26. The dissent argues that we have misconstrued not only the general rule but the status of the application. The dissent maintains that the general rule only applies to "pending" applications and that Town Pump's application, having been denied, was no longer "pending." The District Court described the application as pending, no

doubt, because Town Pump had appealed the decision of the Board. Regardless how the District Court characterized the application, however, the Development Code expressly provides that it shall apply "to all applications . . . not granted as of the effective date of the Code." Clearly, Town Pump's application had not been granted as of the effective date. Contrary to the dissent's interpretation of the general rule, moreover, the general rule does not provide that a zoning ordinance can only be given retroactive effect when an application has been submitted but a zoning board has not yet ruled upon the application. The dissent has misconstrued the analysis that underlies the general rule: the issue is whether an applicant has a vested interest in the application when it is submitted. The general rule would be divested of logic if it meant that an application can be subjected to retroactive zoning laws only until the moment that it is denied, and that thereafter the application is clothed in the impervious armature of vested rights. What the dissent really appears to contend is that Town Pump had a vested right in having the beer and wine application determined under the applicable regulations at the time it submitted the been and wine application. For this novel doctrine of vested rights, the dissent offers no authority and no rationale.

¶27. One notable exception to the general rule arises through equitable considerations. Some courts have declined to apply a new zoning rule to an application made under existing zoning provisions when the applicant has substantially changed his position in reliance on the existing zoning, or on the probability of a permit being issued. *See, e.g.,* Morris v. Postma (N.J. 1964), 196 A.2d 792; Sagittarius, Inc. v. Village of Arlington Heights (Ill. App. Ct. 1980), 413 N.E.2d 90; Board of Supervisors v. Medical Structures, Inc. (Va. 1972), 192 S.E.2d 799. Because Town Pump has not argued that it substantially changed its position in reliance upon the old zoning provisions, we do not address whether this exception should be recognized in the present case.

¶28. We consider next whether Town Pump had a passed transaction. Town Pump asserts that it had a passed transaction that comprised events including the beer and wine application, the Board's conduct in denying the beer and wine application, and Town Pump's appeal of the Board's decision. In *Wallace*, this Court defined transaction as " 'an act or agreement, or several acts or agreements having some connection with each other, in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered.' " *Wallace*, 269 Mont. at 370, 889 P.2d at 821 (citation omitted). Town Pump argues in essence

that retroactive application of the Development Code has imposed new liabilities on Town Pump's "passed" transactions. Town Pump argues further that by amending the Development Code, the Board changed its legal relationship with Town Pump. Town Pump fails, however, to articulate either its legal relationship with the Board or how the legal relationship changed.

¶29. Moreover, in *Wallace*, this Court held that "[t]he mere submission of a license application, although an act by the Wallaces, cannot be said to alter the legal relationship between them and the Department." *Wallace*, 269 Mont. at 371, 889 P.2d at 821. Further, the Court in *Wallace* determined that the Department's review of the Wallaces' application under the new statute "did not impose a new duty, obligation, or disability with respect to a transaction already passed." *Wallace*, 269 Mont. at 371, 889 P.2d at 821. We conclude that Town Pump did not have a "passed" transaction with the Board and that the Board's amendment of the Development Code did not change a "legal" relationship between the Board and Town Pump.

¶30. Thus, under the third prong of *Cosgriffe*, we conclude that the Development Code was "neither arbitrary nor unreasonable in its effects": the Development Code did not impair or burden a vested interest or passed transaction held by Town Pump. *Cosgriffe*, 262 Mont. at 179, 864 P.2d at 778. We hold that the retroactive effect of the Development Code has not denied Town Pump's constitutional right to due process.

¶31. Town Pump's argument that the Board should be estopped from applying the Development Code because it acted in bad faith is without merit. The District Court concluded:

The foregoing Findings of Fact disclose that, while this case was postponed a number of times amounting to a total of approximately 18 months between the date that it was first set for trial and the date it was in fact tried, the Petitioner consented to or did not object to all but the last postponement. . . . Petitioner in this case is in no position to complain because it did not resist the continuances which resulted in the much [sic] of the delay in the trial of the case.

We agree.

¶32. Town Pump argues that in giving the Development Code retroactive effect, the Board attempted to deny Town Pump its statutory and constitutional rights of

appeal. However, Town Pump has exercised its rights to appeal: it appealed the decision of the Board, and it appealed the decision of the District Court. Town Pump's argument is without merit.

¶33. Town Pump argues further that it is the victim of discriminatory zoning, that many of the amendments to the Development Code, including its retroactive provision, were directed at Town Pump. However, Town Pump has made no showing that the amendments were not intended to promote the public interest. This argument is also without merit.

¶34. Finally, Town Pump contends that if this Court determines that the Development Code has a permissible retroactive effect, any town will be free to exculpate itself from wrongdoing through the enactment of exculpatory retroactive laws. We disagree. As previously discussed, a retroactively applied law may not exceed the limits imposed by substantive due process. Because our holding that the Development Code does not have an impermissible retroactive effect is dispositive, we do not address the issues that Town Pump has raised concerning grants of special exceptions and the conduct of the Board.

¶35. 2. Whether the State of Montana has preempted Red Lodge's regulation of the sale of alcohol.

¶36. Town Pump argues that under § 16-1-101(2), MCA, Montana has "entire control" over the sale of alcoholic beverages. Therefore, the State of Montana (Montana) has preempted both the old zoning provisions and the Development Code's regulation of the sale of alcohol. Town Pump contends further that in State v. Haswell, this Court determined that Montana had preempted the sale of alcoholic beverages. State v. Haswell (1966), 147 Mont. 492, 414 P.2d 652. Town Pump also argues that under § 16-3-309, MCA, the only power delegated to a municipality is the ability to define areas within its limits where alcoholic beverages may be sold. Town Pump concludes that discretion "to determine the suitability of premises within the same zone and to review the impact on surrounding areas is vested in the state of Montana." Town Pump argues further that it properly preserved the issue of preemption and that the Board failed to preserve the issue that as a self-governing entity, Red Lodge's regulation of the sale of alcohol has not been preempted by Montana.

¶37. The Board's response may be summarized as follows: Town Pump has failed to preserve the issue of preemption for review, because Town Pump challenged the adoption of the old zoning ordinance but not that of the Development Code. In the alternative, even if Town Pump properly preserved the issue of preemption, Montana's alcohol and beverage laws have not preempted either the old zoning ordinance or the Development Code. Red Lodge is self-governing and under Article XI, Section 6, of the Montana Constitution, as such it may "exercise any power not prohibited by this constitution, law, or charter." Art. XI, Sec. 6, Mont. Const. Montana has not prohibited Red Lodge from regulating the sale of alcohol. Moreover, § 7-1-106, MCA, provides that "[e]very reasonable doubt as to the existence of a local government power or authority shall be resolved in favor of the existence of that power or authority."

¶38. The Board also argues that the Development Code is consistent with Montana's regulations. Section 7-1-113, MCA, provides in pertinent part:

Consistency with state regulation required. (1) A local government with self-government powers is prohibited the exercise of any power in a manner inconsistent with state law or administrative regulation in any area affirmatively subjected by law to state regulation or control.

(2) The exercise of a power is inconsistent with state law or regulation if it establishes standards or requirements which are lower or less stringent than those imposed by state law or regulation.

Section 7-1-113, MCA (emphasis added). Red Lodge's regulation of the sale of alcohol is consistent with and stricter than Montana's regulations. Finally, under § 16-4-203(2)(b)(iv), MCA, Montana may consider whether a proposed retail location for alcohol is consistent with local zoning. The Board contends that this statutory provision is additional evidence that the State of Montana has not preempted the Development Code.

¶39. As threshold issues, we determine that Town Pump preserved for appeal the issue of preemption and that the Board is entitled to argue in response that Red Lodge is a self-governing city. First, the issue of preemption logically encompasses both the old zoning ordinance and the Development Code, and the record establishes that Town Pump made the general argument that the State has preempted regulation of the sale of alcohol. Second, in its post-trial brief, the Board impliedly raised the

argument that Red Lodge has self-governing powers when it considered whether the regulation of on-premises consumption of alcohol is permitted by a statute or by "a city's general zoning powers." Thus, Town Pump and the Board have sufficiently preserved for appeal, respectively, the preemption issue and the argument that Red Lodge has self-governing powers.

¶40. We hold that Montana's alcoholic beverage laws have not preempted Red Lodge's regulation of the sale of alcohol. Red Lodge's regulation of the sale of alcohol is consistent with but more stringent than Montana's regulation of alcohol. Under § 16-4-203(2)(b)(iv), MCA, moreover, Montana may consider whether a proposed retail location for alcohol is consistent with local zoning. We conclude that Montana's statutory framework for the regulation of alcohol clearly contemplates that cities will impose local zoning that regulates the sale of alcohol.

¶41. In light of our holding that Montana has not preempted Red Lodge's regulation of alcohol, we review our conclusion in *Haswell* that Montana has preempted regulation of the sale of alcohol. *Haswell* was decided before the 1972 Montana Constitution. As this Court held in D & F Sanitation Service v. City of Billings, before the 1972 Constitution, "[c]ities had only those powers expressly given them by the legislature." D & F Sanitation Service v. City of Billings (1986), 219 Mont. 437, 444, 713 P.2d 977, 981 (citations omitted). The Court in *D & F Sanitation* then interpreted Article XI, Section 6, as set forth in the 1972 Montana Constitution: " 'Under the shared powers concept, the assumption is that local government *possesses* the power, unless it has been specifically denied.' " *D & F Sanitation Service*, 219 Mont. at 445, 713 P.2d at 982. We conclude that Montana has not specifically denied Red Lodge's power to regulate the sale of alcohol. Accordingly, we overrule *Haswell* to the extent that it is inconsistent with our holding in the present case.

¶42. Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

Justice Karla M. Gray, dissenting.

¶43. I respectfully dissent from the Court's opinion that the retroactive application of the Development Code did not impair or burden a vested interest held by Town Pump and its corresponding determination that the District Court did not err in concluding that Town Pump's appeal of the Board of Adjustment's decision was moot because the Development Code had a permissible retroactive effect. In my view, the Development Code is not applicable to Town Pump's original application for a special exception, by its very terms. Moreover, any attempt to so apply it constitutes an impermissible retroactive application which denies Town Pump's rights to due process under both the United States Constitution and the Montana Constitution. The Court's erroneous decision permits local governments to change the rules after the fact in order to insulate themselves from pending judicial review of actions alleged to be arbitrary, capricious and illegal. In effect, our decision allows local governments to simply legislate themselves out of litigation. Such a decision will hardly improve the distrust with which ever-larger segments of Montana's population view their governments.

¶44. The pertinent facts are that Town Pump properly applied for a special exception under zoning regulations then in effect. The Board took no action for approximately 6 months and then denied the application based on factors which appear, at very least, to have been arbitrary and outside the scope of the applicable regulations. Town Pump timely sought judicial review of the Board's allegedly arbitrary, capricious and illegal conduct in May of 1995, seeking the District Court's reversal of the Board's denial of its application and the court's grant of the special exception. A trial finally occurred in May of 1997. In the meantime, Red Lodge had adopted the Development Code, which required a conditional use permit rather than a special exception for on-premises consumption of alcohol. The Development Code also provided that it was "expressly retroactive and shall apply to all applications . . . which have been received by the city and not granted as of the effective date of this code."

¶45. On the basis of the Development Code, the Board contended that Town Pump's

appeal was moot. The District Court agreed, concluding that Red Lodge had authority to declare that the Development Code applied to all pending applications for special exceptions. The Court also permits application of the Development Code. While I agree that the city could declare the Development Code applicable to all pending applications, I disagree that the Development Code is applicable to Town Pump's application for a special exception and I further disagree with the Court's rationale in determining that Town Pump's constitutional rights to due process were not violated by application of the Development Code.

¶46. First, the language of the Development Code itself renders it applicable to applications which have been received and not granted as of its effective date. Like the District Court, I view the clear terms of the Development Code as rendering it applicable to "pending applications." The fundamental flaw in the Court's analysis is its inability to recognize that Town Pump's application was not "pending" at the time the Development Code was enacted. Town Pump's application had, in fact, been denied two years prior to enactment of that Code. Thus, since the Development Code was inapplicable to Town Pump's application for a special exception by its terms, it is not necessary to proceed with a retroactivity analysis at all. Absent the applicability of the Development Code, it is clear that Town Pump was entitled to proceed with judicial review of the Board's denial of its application.

¶47. The Court proceeds with a retroactivity analysis based on its misunderstanding of the applicability of the Development Code in the first instance, and that analysis continues to be flawed at every stage by its failure to grasp the completed nature of the Board's action on Town Pump's application. I will highlight only a few of my disagreements with the Court's analysis.

¶48. First, it is my view that the Development Code is impermissibly retroactive because it impaired Town Pump's vested rights. Town Pump had a vested right in having the application granted or denied in accordance with regulations applicable at the time of the Board's action. Indeed, the Board acted under the then-existing zoning regulations and denied Town Pump's application. At that point, Town Pump had a vested interest in having its claim that the Board acted arbitrarily, capriciously and illegally under existing regulations reviewed by a court of law. The Development Code, which constituted a new set of regulations, was not enacted until two years after the Board's action and Town Pump's request for judicial review. Clearly, applying the Development Code to Town Pump's application meets our definition of

a retroactive law in that it "takes away or impairs vested rights." *See Wallace*, 269 Mont. at 367, 889 P.2d at 819 (citations omitted).

¶49. Moreover, the Court's reliance on *Wallace* in support of its conclusion that Town Pump's vested rights were not impaired is altogether misplaced. There, the Wallaces submitted their game farm expansion application under the then-current game farm licensing statutes, but a new statute was enacted <u>prior</u> to the time the Department was required to act on the application. The Department denied the application under the new statute and we properly held that the Wallaces' mere submission of an application did not vest in them a right to issuance of the license under the laws in existence on the date the application was submitted. *Wallace*, 269 Mont. at 368, 889 P.2d at 820.

¶50. Here, unlike the situation in *Wallace*, the regulations applicable to Town Pump's application for a special exception at the time the application was submitted remained applicable at the time the Board denied Town Pump's application. There was no change in applicable regulations between the time Town Pump submitted its application and the time the Board acted upon it, as occurred in *Wallace*. Indeed, the change in regulations in this case did not occur until two years after the Board denied Town Pump's application and Town Pump sought judicial review. *Wallace* is inapplicable here.

¶51. Likewise, the Court misreads and, thereafter, misapplies the "general rule" regarding whether applications may be denied based on regulations enacted after the applications are made. That general rule is inapplicable here for the same reasons *Wallace* does not apply. The general rule, as stated by the Court, is that an application may be denied based on a regulation enacted or becoming effective after the application is made. The plain meaning of the general rule--as scrutiny of the A.L. R. Annotation on which the Court relies establishes--is that, when a regulation is adopted or amended <u>during the pendency</u> of an application, the newer regulation can be applied. Indeed, that was the situation before us in *Wallace*, but it is not the situation before us in the present case. The general rule simply does not state that an amended regulation can be applied after an application has been denied and during the time that denial is being challenged in a court of law.

¶52. Finally, the cases from other jurisdictions cited by the Court in support of its application of the general rule--that is, *Town of Stephens City*, *Winiker Realty, Inc.*,

and *Najarian Realty Corp.*--also are inapplicable because each involves a *Wallace*-type situation rather than the situation before us in the present case. In *Town of Stephens City*, for example, the Virginia Supreme Court held that a developer had no vested right in the zoning classification which existed at the time he submitted his subdivision plat application where the zoning ordinance was amended during the pendency of the developer's application and before action was taken or required to be taken on the application. *See Town of Stephens City*, 399 S.E.2d at 816. Similarly, in *Winiker Realty, Inc.*, the application for a special permit was filed on April 23, 1968, the applicable zoning by-law was amended on June 24, 1968, to prohibit the use sought by the applicant, and the application for a special permit was denied on July 19, 1968. Under those facts, the Supreme Judicial Court of Massachusetts held that the application was controlled by the amended by-law. *Winiker Realty, Inc.*, 285 N. E.2d at 452-53. Finally, in *Najarian Realty Corp.*, the hearing on an application for a special permit for a gas station was held on September 8, 1964, under the same zoning ordinance in effect at the time the application was filed. On September 24, 1964, however, the zoning ordinance was amended to eliminate the availability of a special permit for a gas station and, thereafter, the application was denied under the amended zoning ordinance. The Rhode Island Supreme Court held that the amendment applied because the decision-making entity still had the power to act on the application at the time of the amendment. *Najarian Realty Corp.*, 208 A.2d at 529-30. All of these cases involved situations where the amendment was made before the decision-making body acted or was required to act. None involved the situation before us here, where the Development Code was not enacted until some two years after the Board had denied Town Pump's application under the earlier zoning regulations and Town Pump had sought judicial review.

¶53. It is clear that Town Pump had a vested interest in having its case fully and finally resolved under the zoning regulations which existed throughout the time of both its application for a special exception and the Board's denial of the application, and that this vested interest continued through judicial review of the Board's decision. For that reason, I dissent from the Court's failure to hold that Town Pump's constitutional rights to due process have been violated by the retroactive application of the Development Code to moot Town Pump's judicial challenge to the Board's action.

/S/ KARLA M. GRAY

No

Justice James C. Nelson joins in the foregoing dissent of Justice Karla M. Gray.

/S/ JAMES C. NELSON